955 P.2d 90

Montana G. DEL RIO, a minor, by her Guardian Ad Litem, Humberto DEL RIO, Plaintiff–Appellant,

v.

Sandra CRAKE, Defendant–Appellee,

and

John Does 1–5, Doe Corporations 1–5, Doe Partnerships 1–5, Roe Non–Profit Corporations 1–5, and Roe Governmental Agencies 1–5, Defendants.

No. 21094.

Supreme Court of Hawai'i.

May 8, 1998.

Timothy P. McNulty, on the briefs, Kihei, for plaintiff-appellant.

Melvyn M. Miyagi and James V. Myhre, of Reid, Richard & Miyagi, on the briefs, Honolulu, for defendant-appellee.

Deborah Day Emerson and David A. Webber, Deputy Attorneys General, on the briefs, as amicus curiae.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

MOON, Chief Justice.

On July 17, 1997, the circuit court of the second circuit entered a written order granting defendant-appellee Sandra Crake's motion for summary judgment against plaintiff-appellant Montana G. Del Rio, a minor, by her guardian *ad litem*, Humberto Del Rio. Del Rio appeals, contending that the circuit court erred in ruling that, because Del Rio did not meet any of the tort threshold exceptions [1] enumerated in Hawaii Revised Statutes (HRS) § 431:10C–306(b) (1993) [2], she

---

1. The parties agree that Del Rio does not qualify under any of the tort threshold exceptions.

2. HRS § 431:10C–306 provides in relevant part:

was precluded from bringing suit in tort against the allegedly negligent Crake, notwithstanding that Del Rio was uninsured and, therefore, ineligible for no-fault benefits. Specifically, Del Rio contends that the tort threshold statute, HRS § 431:10C–306, is unconstitutional per *Joshua v. MTL, Inc.*, 65 Haw. 623, 656 P.2d 736 (1982), and *McAulton v. Goldstein*, 66 Haw. 14, 656 P.2d 96 (1982), and requests that this court so declare and remand this matter for trial.

For the reasons set forth below, we (1) overrule *Joshua* and *McAulton*, and (2) affirm the circuit court's order granting summary judgment in favor of Crake.

## I. BACKGROUND

This case arises from an August 20, 1995 motor vehicle accident that occurred at the intersection of Ka'anapali Parkway and Noheakai Drive in Ka'anapali, Maui. Del Rio, a minor, was driving an uninsured motor vehicle registered to her father. Crake, a tourist, ran the stop sign at the intersection and impacted the vehicle Del Rio was operating. Del Rio sustained personal injuries, but, because the vehicle she was operating was uninsured, she was unable to obtain no-fault benefits to pay for the health care expenses related to her injuries. On September 11, 1996, Del Rio filed suit against Crake, seeking to recover damages in tort. Crake then moved for summary judgment, and, on July 9, 1997, the circuit court heard argument on the motion.

At the hearing, Del Rio relied upon *Joshua* and *McAulton* as supporting her right to bring suit in tort. The court in *Joshua* held that the tort threshold statute then in effect[3]

**Abolition of tort liability.** (a) Except as provided in subsection (b), this article abolishes tort liability of the following persons with respect to accidental harm arising from motor vehicle accidents occurring in this State:

(1) Owner, operator or user of an insured motor vehicle; or

(2) Operator or user of an uninsured motor vehicle who operates or uses such vehicle without reason to believe it to be an uninsured motor vehicle.

(b) Tort liability is not abolished as to the following persons, their personal representatives, or their legal guardians in the following circumstances:

(1) (A) Death occurs to such person in such a motor vehicle accident; or

(B) Injury occurs to such person which consists, in whole or in part, in a significant permanent loss of use of a part or function of the body; or

(C) Injury occurs to such person which consists of a permanent and serious disfigurement which results in subjection of the injured person to mental or emotional suffering;

(2) Injury occurs to such person in a motor vehicle accident in which the amount paid or accrued exceeds the medical-rehabilitative limit established in section 431:10C–308 for expenses provided in section 431:10C–103(10)(A) and (B); provided that the expenses paid shall be presumed to be reasonable and necessary in establishing the medical-rehabilitative limit; or

(3) Injury occurs to such person in such an accident and as a result of such injury that the aggregate limit of no-fault benefits outlined in section 431:10C–103(10) payable to such person are exhausted.

(c) Subsections (a) and (b) shall apply whether or not the injured person is entitled to receive no-fault benefits. The party against whom the presumption under this section is directed shall have the burden of proof to rebut the presumption.

(d) No claim may be made for benefits under the uninsured motorist coverage by an injured person against an insurer who has paid or is liable to pay no-fault benefits to such injured person unless such claim meets the requirements of subsection (b).

(Bold emphasis in original.) (Underscored emphasis added.)

3. *Joshua* interpreted HRS Chapter 294 (1976), which was initially enacted in 1973 and subsequently revised by Act 295, Hawaii Session Laws 1983. Act 295, codified again as HRS § 294–6 (1984 Supp.), was in turn subsequently revised and recodified in HRS § 431:10C–306. *See supra* note 2. The relevant sections of the 1973 and 1983 provisions, as codified in the 1976 volume and in the 1984 Supplement of HRS, respectively, are as follows:

§ 294–6 [1976] **Abolition of tort liability.** (a) Tort liability of the owner, operator or user of an insured motor vehicle, or the operator of user of an uninsured motor vehicle who operates or uses such vehicle without reason to believe it to be an uninsured motor vehicle, with respect to accidental harm arising from motor vehicle accidents occurring in this State, is abolished, except as to the following persons or their personal representatives, or legal guardians, and in the following circumstances:

(1) Death occurs to such person in such a motor vehicle accident; or injury occurs to such person which consists, in whole or in part, in a significant permanent loss of use of a part or function of the body; or injury occurs to such person which consists of a

worked an unconstitutional denial of equal protection as applied to persons ineligible for no-fault benefits because the ineligible tended to be poor.

In *Joshua*, the plaintiff (Joshua) was injured when an MTL bus struck his vehicle. Unbeknownst to Joshua, his insurance had been canceled and notice thereof sent to his parents' home. Consequently, at the time of the accident, he was an uninsured driver and, thus, unable to recover no-fault benefits, even though the other vehicle was insured. He thereafter sued in tort; however, because he was ineligible to receive no-fault benefits, the trial court ruled that he was required to bring his action within two years of the accident under HRS § 294–36(b)(1) (1976), even though, under HRS § 294–36(b)(2) (1976), persons receiving no-fault benefits have until two years after the last payment of such benefits to commence suit.

> permanent and serious disfigurement which results in subjection of the injured person to mental or emotional suffering;
> (2) Injury occurs to such person in a motor vehicle accident in which the amount paid or accrued exceeds the medical-rehabilitative limit establishes in section 294–10(b) for expenses provided in section 294–2(10)(A) [medical expenses] and (B) [therapy];
> (3) Injury occurs to such person in such an accident and as a result of such injury the aggregate limit of no-fault benefits outlined in section 294–2(10) payable to such person are exhausted.

HRS § 294–6 (1976) (bold emphasis in original). **§ 294–6 [1984 Supp.] Abolition of tort liability.** (a) Tort liability of the owner, operator or user of an insured motor vehicle, or the operator or user of an uninsured motor vehicle who operates or uses such vehicle without reason to believe it to be an uninsured motor vehicle, with respect to accidental harm arising from motor vehicle accidents occurring in this State, is abolished, except as to the following persons or their personal representatives, or legal guardians, and in the following circumstances:
(1) Death occurs to such person in such a motor vehicle accident; or injury occurs to such person which consists, in whole or in part, in a significant permanent loss of use of a part or function of the body; or injury occurs to such person which consists of a permanent and serious disfigurement which results in subjection of the injured person to mental or emotional suffering;
(2) Injury occurs to such person in a motor vehicle accident in which the amount paid or accrued exceeds the medical-rehabilita-

On appeal, a majority of the *Joshua* court first noted that, prior to abolition of tort liability, a person suffering personal injuries due to the negligence of another in an automobile accident could bring suit against the negligent party. However, following enactment of HRS § 294–6, a person who could not claim no-fault benefits was also precluded from bringing suit if he or she could not meet any of the tort threshold exceptions.

The *Joshua* majority then applied the rational basis test to HRS § 294–6 to determine whether it denied those ineligible for no-fault benefits the equal protection of the laws. The *Joshua* majority found it to be so because

> common sense tells us that the class of people most likely to find themselves in appellant's position are those whose poverty causes them to be unable to afford insurance. The unfortunate consequence of this is that the people most likely to be

> tive limit established in section 294–10(b) for expenses provided expenses provided in section 294–2(10)(A) [medical expenses] and (B) [therapy];
> (3) Injury occurs to such person in such an accident and as a result of such injury the aggregate limit of no-fault benefits outlined in section 294–2(10) payable to such person are exhausted.
> *This section shall apply whether or not the injured person is entitled to receive no-fault benefits.*
> (b) *No claim may be made for benefits under the uninsured motorist coverage by an injured person against an insurer who has paid or is liable to pay no-fault benefits to such injured person unless such claim meets the requirements of foregoing section (a)(1), (2) or (3).*

HRS § 294–6 (Supp.1984) (bold emphasis in original) (underscored emphasis added).

Substantively, with respect to the issues on appeal, the statute has not changed since its original enactment in 1973, other than to state expressly that: (1) the tort threshold exceptions apply whether or not the injured person is entitled to receive no-fault benefits; and (2) the uninsured injured party cannot claim against the uninsured motorist coverage of the other party unless the injured party meets the same exceptions that permit suit in tort.

The statute has also been further amended, but such amendments did not become effective until January 1, 1998 and, thus, do not apply to this appeal. Furthermore, even if they did, they would not alter this case substantively.

deprived of any hope of recovering their medical expenses either through a tort suit or insurance are also the people most likely to be unable to otherwise pay for, or even to obtain, the needed medical services for injuries negligently inflicted upon them by insured drivers. The result of the classification is hence likely to result not only in denying the class discriminated against reimbursement for their medical expenses but, as a practical matter, in actually depriving them of the needed services whenever the negligent party is driving a vehicle insured under a no-fault policy.

Certainly, given the stated purpose and objective of the Act, [which is to create a system of reparations for injuries and loss arising from motor vehicle accidents, to compensate these damages without regard to fault, and to limit tort liability for these accidents,] there is no rational basis, per se, for its discriminatory effects on appellant and others like him.

*Joshua*, 65 Haw. at 630, 656 P.2d at 741 (footnotes omitted).

The day following issuance of the *Joshua* decision, this court issued its three-to-two decision in *McAulton*. Therein, the plaintiff (McAulton) was an uninsured motorist and again was unable to claim no-fault benefits. McAulton then sued the allegedly negligent party, but the trial court held that suit was precluded because McAulton failed to meet any of the tort threshold requirements under HRS Chapter 294. On appeal, the *McAulton* majority reversed, stating that the tort threshold requirements were unconstitutional as applied to all persons ineligible for no-fault benefits, notwithstanding that McAulton clearly could have afforded to purchase insurance.[4] *McAulton*, 66 Haw. at 15, 656 P.2d at 97.

At the hearing on her motion for summary judgment, Crake argued that *Joshua* and *McAulton* were no longer applicable and, thus, did not govern this case. Crake asserted that this was so because, in 1983, the Legislature responded to *Joshua* and *McAulton* by "restating and clarifying its

intent ... to make clear that the abolition of tort liability and the exceptions thereto apply to all persons regardless of whether they are entitled to receive no-fault benefits."

Specifically, the Legislature, via House Bill 915 (1983) (Act 245), expressed its view in the following standing committee report:

> The majority opinion of the Hawaii Supreme Court in *Joshua v. MTL, Inc.* ... misread the intent of the legislature and may have removed all limits on the time in which an uninsured motorist may bring an action for recovery of tort. The effect of the decision is that law abiding citizens who obtain coverage may not sue in tort under Section 294–6(a)(2), *Hawaii Revised Statutes,* unless they reach the medical-rehabilitative threshold within two years of the last payment of any no-fault benefits, while persons who have failed to obtain coverage can sue at any time without having to reach threshold....
>
> The system of no-fault insurance established by Chapter 294, can only be effective if all drivers participate to the extent required by law. This bill treats uninsured drivers more severely than those who obtain the legally required coverage within the specific legislative intent of encouraging participation by all drivers in the no-fault insurance system. Since the Legislature has provided for persons economically unable to afford insurance under the public assistance provisions of the no-fault law, there is no valid reason for persons not have no-fault insurance.

Sen. Stand. Comm. Rep. No. 830, in 1983 Senate Journal, at 1417. Also, in section 1 of Act 245, the Legislature further discussed its intention and purpose in enacting the no-fault motor vehicle insurance system.

> In constructing Hawaii's No–Fault Law system, the legislature was cognizant of two possible areas of legal objections. The first was whether the taking away of the right to sue constitutes a denial of due process. The second area was whether

---

4. McAulton had purchased the vehicle for $800.00 and then spent approximately $3,500.00 modifying it, including covering the interior with black leather at a cost of $400.00. *McAulton*, 66 Haw. at 17 n. 4, 656 P.2d at 98 n. 4.

persons of limited means would be deprived of equal protection.

The legislature viewed that due process question from the standpoint of an alteration of available remedies, rather than removal of the right to sue. While the legislature views the freedom to engage in gainful employment as a substantially more important privilege than driving, the legislature determined that the public interest would be enhanced by establishing a system of motor vehicle accident reparations which was similar to the one used for accidents on the job site. In so doing, the legislature established a structured system which bore a number of similarities to the workers' compensation system which had been in effect for years. Persons were not denied access to benefits. Only the means of obtaining them had been changed.

In the interest of equal protection, the legislature has remained sensitive to the interests of those whose ability to pay is limited, often due to circumstances beyond their control. Since the legislature has broad authority under the police power to provide for public health, safety, and welfare, however, it was their view that substantial measures can be taken to protect and assist persons who have suffered personal injuries and property damage as a result of motor vehicle accidents. Driving is a privilege, and the legislature always reserves the right to take reasonable measures to restrict this privilege in order to promote the public good. The legislature has provided a means by which indigent persons receiving public assistance may receive state funded insurance coverage.

A constant problem in the no-fault system is the minority which consistently refuses to obtain the motor vehicle insurance coverage required under the law. The legislature has taken more than one approach to encourage full compliance with the law. These approaches include:

(1) Criminal penalties including fines, possible license suspension, jail, and impoundment of the vehicle; and

(2) A civil approach of giving an uninsured person a shorter time period in which to reach the damage threshold and to bring a suit. Uninsured persons were required to reach the threshold and sue within two years after the date of the accident while persons who have the coverage required by law have until two years after they receive their last no-fault benefit payments to reach the threshold and to bring court action.

In recent times, the Hawaii supreme court, however, eroded one of the most important elements of our no-fault system, the mandatory insurance coverage of all those who choose to exercise the privilege of driving. The court's decision in *Joshua v. MTL, Inc.* ... misread the intent of the legislature and in doing so:

(1) Removed all no-fault limits on the time in which an uninsured motorist may bring an action for recovery in tort; and

(2) Eliminated the no-fault law tort threshold requirements altogether with regard to the uninsured motorists.

The effect of the decision is that law abiding citizens who obtain coverage must reach the medical-rehabilitative threshold within two years of the last payment of no-fault benefits, while persons who stubbornly refuse to obtain coverage can sue for damages without regard to the threshold and without the limits of the no-fault law.

The plaintiff in the *Joshua* decision was an indigent, unemployed person who was not aware that his insurance coverage had been canceled. Any inference, however, that the removal of the limitations would apply only to persons in comparable circumstances was abruptly dispelled in *McAulton v. Goldstrin*, ... which the supreme court issued on the following day. In *McAulton*, the court extended the principles enunciated in *Joshua* to a person who chose to spend $400 for black leather to cover his vehicle's interior rather than to purchase the no-fault insurance required by law.

The result of the *Joshua* and *McAulton* decisions is that the no-fault law is interpreted to provide law violators faster and easier access to the judicial system than

law abiding citizens have. These decisions fly in the face of justice and public policy. By rewarding noncompliance, these decisions may well be the first step in what could lead ultimately to the destruction of the no-fault system. If a return is to be made to the fault system which preceded the existing law, it should be done through the conscious decision making process of the legislature as the voice of the people.

Accordingly, the purpose of this Act is to expressly restate, reiterate, and clarify the intent of the legislature in enacting sections 294–6(a) and 294–36(b), Hawaii Revised Statutes, concerning the barring of suits by uninsured motorists for injuries sustained in motor vehicle accidents was originally, and is now:

(1) To prevent a person who is ineligible for no-fault benefits from bringing a civil action if the medical-rehabilitative limit is not reached within two years of the date of the motor vehicle accident;

(2) To deter persons from driving without motor vehicle insurance coverage not only through criminal penalties, but through a limitation on the ability of the uninsured motorist to recover for injuries in tort which is more stringent than the limitations placed upon the law-abiding citizens who have obtained the insurance coverage required by law, and who are thus entitled to no-fault benefits.

1983 Haw. Sess. L. Act 245, § 1 at 510–21.

Del Rio argued that the Legislature's reassertion of its intention did not serve to vitiate the holdings of *Joshua* and *McAulton*, and, thus, that the cases were still valid and the circuit court was bound by their *stare decisis* effect.

On July 9, 1997, the circuit court orally granted Crake's motion, ruling that Del Rio's suit was precluded for failure to meet any of the tort threshold exceptions, even though Del Rio was ineligible for no-fault benefits. The circuit court acknowledged that "the Supreme Court [had] ma[d]e a decision under the old law. Then the legislature came back and said no[;] this is what we really mean." Thus, the circuit court believed that the

question before it was whether it had to "abide by what the legislature clearly says or interpret the prior Supreme Court decision as also—meaning that the new legislation is ... unconstitutional[.]" The circuit court ultimately ruled that subsequent legislative intent superseded the previous judicial declarations in *Joshua* and *McAulton*, stating: "[A]fter considering this matter, I am satisfied that the court should—that the court should not override the clear intent of the legislature[,] and I am going to grant the motion."

On July 17, 1997, without findings of fact or conclusions of law, the circuit court entered its written order granting Crake's motion for summary judgment. Del Rio's timely appeal followed.

## II. STANDARD OF REVIEW

■ A motion for summary judgment is reviewed *de novo*, under the same standard applied by the circuit court. *Konno v. County of Hawai'i*, 85 Hawai'i 61, 70, 937 P.2d 397, 406 (1997) (citation omitted).

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties.

*Id.* (internal quotation marks and citations omitted).

## III. DISCUSSION

### A. Stare Decisis

Del Rio argues that a subsequent legislature's re-enactment of an unconstitutional statute does not purge it of its unconstitutionality, notwithstanding clarification of the legislature's intent. Crake responds that the statute is not unconstitutional because this court, in *Joshua* and *McAulton*, "misinterpreted the Legislature's intent inasmuch as it meant then and now to preclude recovery in

tort regardless of whether one did or did not have motor vehicle insurance."

Del Rio is correct—a legislature's subsequent assertion that it in fact intended to enact an unconstitutional statute does not thereby cause that statute to pass constitutional muster. Rather, the question as to the constitutionality of a statute is not for legislative determination, but is vested in the judiciary, and a statute cannot survive constitutional challenge based on legislative declaration alone. *Stephenson v. Binford,* 53 F.2d 509, 514 (S.D.Tex.1931), *aff'd,* 287 U.S. 251, 53 S.Ct. 181, 77 L.Ed. 288 (1932).

The legislature cannot force the judiciary to construe a statute in accordance with legislative interpretation. *California Employment Stabilization Comm'n v. Chichester Transp. Co.,* 75 Cal.App.2d 899, 172 P.2d 100, 102 (1946). Nor can the legislature "effect a change in [the] construction [of a statute] by a later declaration of what it had originally intended." *Bates v. Board· of Educ.,* 136 Ill.2d 260, 144 Ill.Dec. 104, 107, 555 N.E.2d 1, 4 (1990). "An erroneous opinion of an existing law by the legislature does not alter it." *Anderson v. Hadley,* 245 Iowa 550, 63 N.W.2d 234, 239 (1954).

Recently, the United States Supreme Court reaffirmed the fundamental, one hundred ninety-five-year-old tenet of federal constitutional jurisprudence that the judicial branch is the final arbiter of the United States Constitution:

> Our national experience teaches that the Constitution is preserved best when each part of the government respects both the Constitution and the proper actions and determinations of the other branches. When the Court has interpreted the Constitution, it has acted within the province of the Judicial Branch, which embraces the duty to say what the law is. *Marbury v. Madison,* [1 Cranch 137, 5 U.S. 137, 2 L.Ed. 60 (1803) ]. When the political branches of the Government act against the background of a judicial interpretation of the Constitution already issued, it must be understood that in later cases and controversies the Court will treat its precedents with the respect due them under settled principles, including stare decisis, and contrary expectations must be disappointed. RFRA [*i.e.,* the Religious Freedom Reformation Act,] was designed to control cases and controversies, such as the one before us; but as the provisions of the federal statute here invoked are beyond congressional authority, it is the Court's precedent, not RFRA, which must control.

*City of Boerne v. Flores,* —— U.S. ——, ——, 117 S.Ct. 2157, 2172, 138 L.Ed.2d 624 (1997).

Similarly, this court is the "final arbiter of the meaning of the provisions of the Hawai'i Constitution." *State v. Hoey,* 77 Hawai'i 17, 33 n. 16, 881 P.2d 504, 520 n. 16 (1994) (citation, internal quotation marks, and internal brackets omitted); *State v. Santiago,* 53 Haw. 254, 265, 492 P.2d 657, 664 (1971). If a statute is determined by the court to contravene the equal protection of the laws, such a determination can be changed only by constitutional amendment or via the court's power to overrule its prior decisions.

Therefore, because HRS § 431:10C–306 (1993), with respect to the issues on appeal, is substantively identical to its predecessors (HRS § 294–6 (1976) and HRS § 294–6 (1984 Supp.)), we hold that *Joshua* and *McAulton* have *stare decisis* effect and thus, as of this moment, retain their precedential character.

However, for the reasons set forth below, we overrule *Joshua* and *McAulton* as having misapplied the rational basis test. We further hold that HRS § 431:10C–306 (1993) does not violate the constitutional right to the equal protection of the laws as applied to persons ineligible for no-fault benefits.

### B. *Rationality of HRS § 431:10C–306 (1993)*

In analyzing alleged equal protection violations, classifications that are neither "suspect" nor "quasi-suspect" are subject to the rational basis test. *Cf. Baehr v. Lewin,* 74 Haw. 530, 852 P.2d 44, *reconsideration denied,* 74 Haw. 645, 852 P.2d 74 (1993); *see also Nachtwey v. Doi,* 59 Haw. 430, 437, 583 P.2d 955, 960 (1978) (classifications based

upon poverty, or impacting the poor as a class, are subject to the rational basis test). Similarly, because the class of persons, indigent or otherwise, who are ineligible for no-fault benefits is neither "suspect" nor "quasi-suspect," we must apply the rational basis test to the case at hand.

To prevail, a party challenging the constitutionality of a statutory classification on equal protection ground has the burden of showing, with convincing clarity that the classification is not rationally related to the statutory purpose, or that the challenged classification does not rest upon some ground of difference having a fair and substantial relation to the object of the legislation....

Equal protection does not mandate that all laws apply with universality to all persons; the State cannot function without classifying its citizens for various purposes and treating some differently from others. The legislature may not, however, in exercising this right to classify, do so arbitrarily. The classification must be reasonably related to the purpose of the legislation.

*Washington v. Fireman's Fund Ins. Companies,* 68 Haw. 192, 199, 708 P.2d 129, 134 (1985) (citations, internal quotation marks, and brackets omitted), *cert. denied,* 476 U.S. 1169, 106 S.Ct. 2890, 90 L.Ed.2d 977 (1986).

█ Thus, under the rational basis test, "the court essentially asks whether a statute rationally furthers a legitimate state interest." *Housing Fin. & Dev. Corp. v. Castle,* 79 Hawai'i 64, 86, 898 P.2d 576, 598 (1995); *see also State v. Miller,* 84 Hawai'i 269, 276, 933 P.2d 606, 613 (holding that "the challenged classification must bear some rational relationship to legitimate state purposes"), *reconsideration denied,* 84 Hawai'i 496, 936 P.2d 191 (1997). In making this inquiry,

a court will not look for empirical data in support of the statute. It will only seek to determine *whether any reasonable justification can be conceived to uphold the legislative enactment.*

Once it is determined that the legislature passed the statute at issue to further a legitimate government purpose, then the pertinent inquiry is only whether the Leg-

islature rationally could have believed that the statute would promote its objective. Additionally, the lawmakers are under no obligation to convince the courts of the correctness of their legislative judgments. Rather, those challenging the legislative judgment must convince the court that the legislative facts on which the statute is apparently based could not reasonably be conceived to be true by the governmental decisionmaker.

*Castle,* 79 Hawai'i at 86, 898 P.2d at 598 (emphasis added) (citations and quotation marks omitted).

Hence, in determining whether a statute passes constitutional muster under the rational basis test, we apply a two-step test. First, we must ascertain whether the statute was passed for a legitimate governmental purpose. *Id.* Second, if the purpose is legitimate, the court must determine whether the legislature rationally could have believed that the statute would promote its objective. *Id.*

█ In examining the first prong of the test, the legislature has stated that the purpose of Article 10C is to create "a system of reparations for accidental harm and loss arising from motor vehicle accidents[ ] . . . [and to c]ompensate these damages without regard to fault; and [to l]imit tort liability[.]" HRS § 431:10C–102 (1993). Because the State has an interest in protecting the health, safety, and welfare of its citizens, such a purpose is "legitimate." *See, e.g., Warren v. Melville,* 937 P.2d 556, 561 (Utah Ct.App. 1997) (recognizing that the legislature had a legitimate purpose in using its police power to require those who use motor vehicles on the roads of Utah to be subject to Utah's no-fault statute).

The second prong of the inquiry is whether the statute rationally furthers the legitimate state interest. In an effort to fulfil this purpose, the legislature enacted a comprehensive system of laws whereby those who do not participate will be treated more harshly than those who do. In so doing, the legislature based its decision upon the fundamental premise that driving a motor vehicle is a privilege and not a right and that, therefore, if one exercises the privilege of driving

without the concomitant responsibility of operating an insured automobile, he or she will be treated more harshly.

To effectuate this system of motor vehicle insurance and to encourage participation by all drivers in the motor vehicle insurance system:

(1) Those uninsured drivers who try to obtain the *privilege of driving* a motor vehicle without the concomitant responsibility of an ability to compensate adequately those who are injured as a result of a motor vehicle accident *are to be dealt with more severely* in the criminal or civil areas than those who obtain the legally required no-fault insurance coverage[.]

HRS § 431:10C–102(b) (emphases added).

Del Rio asserts, however, that those who are truly indigent are treated differently. As previously noted, however, "the State cannot function without classifying its citizens for various purposes and treating some differently from others." *Washington*, 68 Haw. at 199, 708 P.2d at 134. In the absence of "suspect" or "quasi-suspect" classifications, the legislation will be upheld as long as the legislature "rationally could have believed that the statute would promote its objective." *Castle*, 79 Hawai'i at 86, 898 P.2d at 598. Disincentive to those who opt out of the system is a rational method by which to further one of the legitimate purposes, that is, to encourage participation. Moreover, the legislature has in fact made allowances by way of public assistance for those who cannot afford insurance. "Those persons truly economically unable to afford insurance are provided for under the public assistance provisions of [Article 10C]." HRS § 431:10C–102(b)(2).

Also, although not specifically on point, the District of Columbia Court of Appeals held in *Makanju v. Saunders*, 519 A.2d 703 (D.C. 1987), that the tort threshold bar was constitutional. Therein, a taxicab driver (Makanju) was involved in an accident with one Saunders. Makanju failed to meet the medical rehabilitative limit but nevertheless brought suit in tort. The trial court held that his suit was barred, and Mankanju appealed, contending that the medical rehabili-

tative limits denied him the equal protection of the laws. On appeal, the court held that preventing suit except in those instances where injuries are serious "bears a rational relation to the legislative purposes of assuring adequate protection for accident victims and keeping insurance premiums affordable." *Id.* at 704 (citation omitted); *see also Dinesen v. Towle*, 3 Kan.App.2d 505, 597 P.2d 264, 268 (1979) (holding that "the threshold concept in general and the . . . medical expense standard in particular" are constitutional).

Similarly, in the instant case, it is important to note that, had Del Rio been seriously injured, she would have been able to seek recovery in tort. Moreover, if in fact she and her family were indigent and were unable to afford automobile insurance, they could have applied for public assistance benefits. Under Hawaii's comprehensive scheme, there is no legitimate excuse for driving without insurance coverage. Thus, those who do not participate cannot enjoy the benefits afforded to those who do.

Additionally, under *Joshua* and *McAulton*, persons who opt out of the system receive a benefit that those who abide by the law are not entitled to. In his dissenting opinion in *Joshua*, Justice Nakamura articulated this disparity as follows:

Presumably, one who would ignore the legislative command not to operate an uninsured vehicle now retains a right to sue in tort without limitation whenever harm accrues to him from a vehicular accident; but the law still circumscribes[, by way of the tort threshold limitations,] the rights of those who follow its mandate when they are injured. I cannot believe the demand for equal protection impels this result.

*Joshua*, 65 Haw. at 634, 656 P.2d at 743.

Accordingly, we hold that HRS § 431:10C–306 does not deny equal protection of the laws to those ineligible for no-fault benefits because: (1) driving is a privilege, not a right; (2) disincentives designed to encourage participation are rationally related to the legitimate purposes of creating "a system of reparations for accidental harm and loss arising from motor vehicle accidents[ ] . . . [and to c]ompensate these damages without re-

gard to fault; and [to l]imit tort liability[,]" HRS § 431:10C–102; and (3) persons who are truly indigent can seek coverage through public assistance provisions.

## IV. *CONCLUSION*

Because HRS § 431:10C–306 is constitutional as applied to those ineligible for no-fault benefits, we: (1) overrule *Joshua v. MTL, Inc.,* 65 Haw. 623, 656 P.2d 736 (1982), and *McAulton v. Goldstrin,* 66 Haw. 14, 656 P.2d 96 (1982); and (2) affirm the circuit court's order granting summary judgment in favor of Crake.