978 P.2d 772

**In the Matter of the Tax Appeal of GAR-DENS AT WEST MAUI VACATION CLUB, Appellant,**

v.

**COUNTY OF MAUI, Appellee.**

**No. 21903.**

Supreme Court of Hawai‘i.

May 11, 1999.

Robert E. Rowland (Matthew V. Pietsch with him on the briefs), Kahului, for appellant.

Traci Fujita Villarosa (Brian T. Moto with her on the brief), Deputies Corporation Counsel, for appellee.

MOON, C.J., KLEIN, LEVINSON, NAKAYAMA, and RAMIL, JJ.

Opinion of the Court by KLEIN, J.

Appellant Gardens at West Maui Vacation Club ("appellant") appeals from the judgment of the Tax Appeal Court in favor of appellee County of Maui ("the County") and against appellant, filed September 3, 1998. Appellant challenges the real property tax assessed for the 1997 tax year upon its properties located in the County of Maui.

On appeal, appellant contends that (1) the County's differential tax rate structure is an invalid exercise of its real property taxation powers; (2) the County's differential tax rate with respect to time share owners of a condominium unit violates the Equal Protection Clauses of the Hawai'i and United States Constitutions; (3) Maui Ordinance 2569 (Ordinance 2569) amending subsection C.4. of Maui County Code (MCC) § 3.48.305, rendered MCC § 3.48.305.C unconstitutionally vague and ambiguous; and (4) the retroactive application of Ordinance 2569 unconstitutionally deprived appellant of "vested rights." For the reasons set forth below, we affirm the judgment of the Tax Appeal Court.

## I. BACKGROUND

The Gardens at West Maui Vacation Residence is located in the County of Maui. The properties are units subject to a time share plan, as defined in Hawai'i Revised Statutes

1. HRS § 514E-1 provides in relevant part:
   "Time share interest" means any interest in a time share unit or plan which entitles the owner or holder thereof to the use, occupancy or possession of a time share unit on a periodically recurring basis.
   "Time share plan" means any plan or program in which the use, occupancy, or possession of one or more time share units circulates among various persons for less than a sixty-day period in any year, for any occupant.

2. MCC § 3.48.185 states in pertinent part:

(HRS) § 514E-1 (1993),[1] registered with the Department of Commerce and Consumer Affairs. The tax map key numbers, land classification, assessed valuations as determined by the Tax Assessor of the Second Taxation District, and the approximate taxes in controversy are as follows:

| Tax Key No. | Land Classification | Valuation | Taxes In Controversy |
|---|---|---|---|
| 4-3-2-40:20 | Hotel/Resort | $135,400 | $440 |
| 4-3-2-40:21 | Hotel/Resort | $135,400 | $440 |
| 4-3-2-40:22 | Hotel/Resort | $135,400 | $440 |
| 4-3-2-40:23 | Hotel/Resort | $135,400 | $440 |
| 4-3-2-40:25 | Hotel/Resort | $135,400 | $440 |
| 4-3-2-40:26 | Hotel/Resort | $135,400 | $440 |
| 4-3-2-40:28 | Hotel/Resort | $135,400 | $440 |
| 4-3-2-40:30 | Hotel/Resort | $130,600 | $424 |
| 4-3-2-40:33 | Hotel/Resort | $130,600 | $424 |
| 4-3-2-40:34 | Hotel/Resort | $130,600 | $424 |

The County of Maui classifies real property into nine classifications based on use for the purpose of real property taxation. Based on these classifications, the County assigns differential real property tax rates. The rates instituted for the 1997 tax year for each class of property are as follows:

| Classification | Tax Rate per $1000 of Net Taxable Assessed Valuation |
|---|---|
| Improved Residential | $4.75 |
| Apartment | $4.75 |
| Commercial | $6.50 |
| Industrial | $6.50 |
| Agricultural | $4.75 |
| Conservation | $4.75 |
| Hotel & Resort | $8.00 |
| Unimproved Residential | $4.75 |
| Homeowner | $3.50 |

Pursuant to MCC § 3.48.185,[2] real property is assessed on January 1 preceding each tax year. Accordingly, appellant's property was assessed for the 1997 tax year on January 1, 1997. The 1997 tax year began on July 1, 1997 and ended on June 30, 1998.

During the tax years prior to 1997, appellant's properties had been assessed in the classification "Apartment" under MCC § 3.48.305.[3] When the County tax assessment

For real property tax purposes, "tax year" means the fiscal year beginning July 1st of each calendar year and ending June 30 of the following calendar year. Real property shall be assessed and taxes shall be levied thereon as of January 1st preceding each tax year upon the basis of valuations determined in the manner and at the time provided in this Chapter.

3. MCC § 3.48.305 provides in relevant part:
   C. When property is subdivided into condominium units, each unit shall be classified

notices for the 1997 tax year were distributed in March 1997, appellant was notified of a change in its properties' classification from "Apartment" to "Hotel Resort."

On March 14, 1997, the Mayor of the County of Maui submitted the proposed county budget for Fiscal Year 1998 accompanied by a proposed bill entitled "A Bill for an Ordinance Amending Section 3.48.305, Maui County Code, Pertaining to Real Property Taxation of Condominium Units Classified Hotel Resort" (Bill No. 29). The initial draft of bill No. 29 provided that the ordinance, if passed, would "take effect upon its approval."

In April 1997, appellant filed an appeal from the tax assessment notices received in March 1997 with the Real Property Tax Board of Review. At the time of that appeal, MCC § 3.48.305.C.4 defined "Hotel Resort" as a unit "occupied by transient tenants for periods of less than six consecutive months."

Thereafter, Bill No. 29 was passed by the Maui County Council on May 29, 1997 and approved by the Mayor of the County of Maui on June 13, 1997 (Ordinance 2569). It provided that the ordinance "shall be effective as of January 1, 1997" and amended MCC § 3.48.305 subsection C.4 to read as follows:

4. Hotel Resort. Units occupied by transient tenants for periods of less than six consecutive months *and units subject to a time share plan as defined in section 514E-1, Hawai'i Revised Statutes, as amended, shall be classified as "hotel resort."*

(Emphasis added.) Ordinance 2569 officially reclassified appellant's property from "Apartment" to "Hotel Resort" retroactive to January 1, 1997.

On August 29, 1997, the Real Property Tax Board of Review entered a decision in favor of the County and against appellant. Appellant filed an appeal with the Tax Appeal Court on September 29, 1997.[4]. The Tax Appeal Court entered its findings of fact and conclusions of law and order on August 17, 1998. In rejecting all four of appellant's claims, the court concluded in pertinent part that:

1. The County of Maui has the power to set the taxation rate and classification of Appellant's time share condominium units as "Hotel Resort." The Hawai'i State Constitution grants the counties all powers relating to real property taxation, including the power to set differential rates....

2. Retroactive tax provisions withstand due process challenges unless, in light of the "nature of the tax and the circumstances in which it was laid," the law "is so harsh and oppressive as to transgress the constitutional limitation." *Welch v. Henry,* 305 U.S. 134, 147, 59 S.Ct. 121, 83 L.Ed. 87 (1938).

... this court finds no violation of Appellant's due process.

a) The County's purpose was neither illegitimate nor arbitrary. There is no plausible contention that the County acted with an improper motive such as targeting Appellant for a particular reason.

b) The County acted promptly and established only a modest period of retroactivity....

3. ... the Owners had not acquired vested rights in being classified as "Apartment" rather than "Hotel Resort." In *Carlton,* the Court looked at whether detrimental reliance alone was sufficient to establish a constitutional violation. The Court held that the Appellant's reliance alone was insufficient to establish a constitutional right....

4. The statutory and applicable definition of a "time share unit" is precise and unambiguous. There is no confusion, given the

---

upon consideration of its actual use into one of the general classes as follows:

...

2. Apartment. Only those units occupied by the owner for personal use or by a lessee for a term of six consecutive months or more shall be classified as "apartment."

...

4. Hotel Resort. Units occupied by transient tenants for periods of less than six consecutive months shall be classified as "hotel resort."

4. The parties stipulated that appellant had the right to appeal the real property tax assessments of the properties and was a proper party to the Tax Appeal Court appeal.

definitions of "Apartment" and "Hotel Resort", as to where a "time share unit" is to be classified. In stating that "time share" owners are no different from an apartment owner because they also use their units for their own "personal use", Appellants have taken a very strained and limited interpretation of "Apartment" classification and ignored the statutory and applicable definition of "time share units", which must be read in conjunction with this ordinance. Accordingly, there is no credible basis to Appellant's position relating to "vagueness" and violation of the equal protection clause.

5. The County of Maui's differential tax rate structure is not an invalid exercise of its real property taxation powers. [HRS] Chapter 246A clearly empowers the counties with the authority and ability to develop a real property tax rate structure....

6. The County's differential tax rate with respect to condominium units does not violate the equal protection clauses of the United States and Hawai'i State Constitutions.

. While there was no change in the actual use of the condominiums when they were reclassified, this alone does not violate the equal protection clauses of the Constitutions.

The County has considerable discretion in classifying taxation rates. As long as this reclassification was not capricious nor arbitrary, the reclassification is valid....

The County only needs to show some reasonable consideration of difference or policy for constitutionality. The classification of time share condominium units as "Hotel Resort" bears a fair and substantial relation to the purpose of eliminating disparities in the tax treatment of time share units.

Accordingly, the Tax Appeal Court entered judgment in favor of the County and against appellant on September, 3, 1998. Appellant timely filed this appeal.

## II. . *STANDARDS OF REVIEW*

■ It is well settled that[,] in reviewing the decision and findings of the Tax Appeal Court, a presumption arises favoring its actions which should not be overturned without good and sufficient reason. The appellant has the burden of showing that the decision of the Tax Appeal Court was "clearly erroneous."

*In re Tax Appeal of Maile Sky Court Co., Ltd. v. City & County of Honolulu,* 85 Hawai'i 36, 39, 936 P.2d 672, 675 (1997) (quoting *City and County of Honolulu v. Steiner,* 73 Haw. 449, 453, 834 P.2d 1302, 1306 (1992)).

■ Conversely, "[C]onclusions of law are reviewed under the right/wrong standard." *Gold v. Harrison,* 88 Hawai'i 94, 100, 962 P.2d 353, 359 (1998) (citing *Furukawa v. Honolulu Zoological Society,* 85 Hawai'i 7, 12, 936 P.2d 643, 648 (1997)). Under the de novo or right/wrong standard, this court "examine[s] the facts and answer[s] the question without being required to give any weight to the trial court's answer to it." *Id.* (citing *Aickin v. Ocean View Inv. Co., Inc.,* 84 Hawai'i 447, 453, 935 P.2d 992, 998 (1997)).

■ "We answer questions of constitutional law by exercising our own independent constitutional judgment based on the facts of the case. Thus, we review questions of constitutional law under the right/wrong standard." *State v. Mallan,* 86 Hawai'i 440, 443, 950 P.2d 178, 181 (1998) (citation omitted).

■ Finally, the meaning of a statute is a question of law that this court reviews de novo. *Furukawa* at 12, 936 P.2d at 648.

When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is obtained primarily from the language contained in the statute itself. Where the language of a statute is plain and unambiguous, our only duty is to give effect to the statute's plain and obvious meaning. Further, in interpreting a statute, we give the words their common meaning, unless there is something in the statute requiring a different interpretation.

*Id.* (citing *Iddings v. Mee–Lee,* 82 Hawai'i 1, 6–7, 919 P.2d 263, 268–69 (1996)).

## III. DISCUSSION

### A. HRS § 248-2 was Repealed by Implication.

■ Appellant first contends that the County's differential tax rate structure is an invalid exercise of its real property taxation powers. Specifically, appellant argues that article VIII, section 3 [5] of the Hawai'i Constitution (1978) and HRS § 246A-2 (1993) [6] did not grant the counties the power to classify real property by use and correspondingly establish differential tax rates. Appellant asserts that, although HRS § 246A-2 transferred the real property taxation powers to the counties, the transfer is subject to the requirement under HRS § 248-2 (1993) [7] that the State maintain a single rate of tax. Thus, according to appellant, while the County had the power to tax real property, it lacked the ability under HRS § 248-2 to create classifications of property and tax them at differential rates. Appellant therefore argues that HRS § 248-2 was not repealed by implication by article VIII, section

3 of the Hawai'i Constitution or by HRS § 246A-2.

■ As a general rule, repeals by implication are disfavored. *Richardson v. City and County of Honolulu*, 76 Hawai'i 46, 70, 868 P.2d 1193, 1217 (1994); *Wong v. Takeuchi*, 88 Hawai'i 46, 53, 961 P.2d 611, 618 (1998). "[I]f effect can reasonably be given to two statutes, it is proper to presume that the earlier statute is to remain in force and that the later statute did not repeal it." *Richardson*, 76 Hawai'i at 70, 868 P.2d at 1217 (quoting *Reefshare, Ltd. v. Nagata*, 70 Haw. 93, 97, 762 P.2d 169, 172 (1988)). However,

> when the latter act is exclusive, that is, when it covers the whole subject to which it relates, and is manifestly designed by the legislature to embrace the entire law on the subject, it will be held to repeal by implication all prior statutes on that matter whether they are general or special, even though they are not repugnant, unless it is expressly provided that prior special acts shall not be affected.

5. Article VIII, section 3 of the Hawai'i Constitution states in relevant part:

> The taxing power shall be reserved to the State, except so much thereof as may be delegated by the legislature to the political subdivisions, and except that all functions, powers and duties relating to the taxation of real property shall be exercised exclusively by the counties, with the exception of the county of Kalawao. The legislature shall have the power to apportion state revenues among the several political subdivisions.

6. HRS § 246A-2 provides in relevant part:

> **Transfer of functions.** Effective July 1, 1981, the functions, powers, duties and authority heretofore exercised by the department of taxation relating to the taxation of real property shall be exercised by the respective counties, except the County of Kalawao as provided by Article VIII, Section 3 of the State Constitution.
> . . .
> (3) . . . Each county may determine real property tax rates by resolution under procedures defined in the real property tax ordinance of the county.

7. HRS § 248-2 provides in pertinent part:

> (a) The council of each county may increase or decrease the tax rate at which real property in that county shall be taxed for each tax year. A resolution increasing or decreasing the tax rate in each county shall be adopted on or

before June 20 preceding the tax year for which property tax revenues are to be raised according to the following procedures:

> . . . .
> If the council of each county does not increase or decrease the tax rate certified to the council by the director of taxation under subsection (d) as provided in this subsection, the tax rate so certified shall be the tax rate in the county for the tax year for which the property tax revenues are to be raised.
> (b) The council of each county shall increase or decrease the tax rate applicable in the county using the following method:
> (1) The total revenue to be raised from real property in the county shall be divided by the aggregate value of the taxable real property within the county. The aggregate value of taxable real property within the county shall mean the net assessed value of all real property in the county as of April 19 preceding the tax year. In all cases where appeals from the assessment of the department of taxation have not yet been finally determined, the values used in determining the aggregate shall be the value claimed by the taxpayer in each case, plus fifty per cent of the value in dispute.
> (2) The rate shall be expressed in terms of the tax per $1,000 of assessed value of taxable real property in the county, provided that the applicable rate for each county shall be computed to the nearest cent.

*Fasi v. City and County of Honolulu,* 50 Haw. 277, 285, 439 P.2d at 211 (1968) (citations omitted). *See also Moyle v. Director, Office of Workers' Compensation Programs,* 147 F.3d 1116, 1120 (9th Cir.1998) (repeal by implication is found "where provisions in the two acts are in irreconcilable conflict," or "if the later act covers the whole subject of the earlier one and is clearly intended as a substitute.") (citation omitted); *Hahn v. Commissioner of Internal Revenue,* 110 T.C. 140, 149, 1998 WL 91383 (1998) (same) (quoting *Radzanower v. Touche Ross & Co.,* 426 U.S. 148, 154, 96 S.Ct. 1989, 48 L.Ed.2d 540 (1976) (citation omitted)); *Emulsified Asphalt, Inc. v. Transportation Commission of Wyoming,* 970 P.2d 858, 863 (Wyo.1998) (implied repeal may be found when "the whole subject of the earlier statute is covered by the later one having the same object, clearly intending to prescribe the only rules applicable to the subject.") (citation omitted).

▮▮▮▮ Article VIII, section 3 was expressly and manifestly designed to transfer to the counties broad powers of real property taxation. It provides that "all functions, powers and duties relating to the taxation of real property shall be exercised exclusively by the counties." The proceedings of the 1978 constitutional convention also reveal that the purpose of the amendment was to place the burden of the real property taxation system at the county level:

> Your Committee changed this amendment to include the phrase "all functions, powers and duties relating to the taxation of real property" in order to clarify the standing committee's intent to grant all taxing powers relating to real property to the counties, except Kalawao.... Your Committee rejected an amendment to return this section to its original language which rests all taxing powers with the State.

Comm. of the Whole Rep. No. 7, in 1 Proceedings of the Constitutional Convention of Hawai'i of 1978, at 1008 (1980). There are no provisions limiting or restricting the tax rate structure determined by the counties. *See* Haw. Const. art. VIII, section 3.

In 1977, HRS § 248–2 was amended to preclude differential tax rates. Both article VIII, section 3 and HRS § 246A–2, implementing the constitutional amendment, were enacted subsequent to the 1977 amendment of HRS § 248–2. In 1980, article VII, section 2 transferred all property tax functions to the counties. *See* Comm. of the Whole Rep. No. 7, in 1 Proceedings of the Constitutional Convention of Hawai'i of 1978, at 1008 (1980). HRS § 246A–2 thereafter reaffirmed that transfer, effective July 1, 1981. *See* HRS § 246A–2. Neither provision limited or restricted the counties' taxing authority. The constitutional and legislative acts covered the whole subject of property taxation power and embraced the entire law in that regard.[8]

Given that the 1980 amendment and subsequent legislative act, which encompassed the entire field, followed the 1977 amendment to HRS § 248–2 precluding differential taxation, the former fully superseded the latter. The participants of the 1978 constitutional convention and 1980 legislature are presumed to have been aware of the 1977 amendment to HRS § 248–2 and are therefore presumed to have repealed it by implication.

▮▮▮▮ The plain language of HRS § 246A–2, moreover, reflects legislative intent to confer to the counties the power to tax real property at differential rates. It explicitly provides that "*[e]ach county* may determine real property tax *rates* by resolution under procedures defined in the real property tax ordinance of the county." (Emphasis added.) In light of the statute's broad transfer of real property taxing power to the counties and its unambiguous language granting each county the authority to determine real property tax *rates,* it is consistent with the statute's overall purpose that the counties have the power to tax real property at differential rates.

HRS § 248–2 was thus obviated by both the constitutional amendment and statute transferring all real property taxation powers to the counties, including the option to classify real property in the discretion of the individual county.[9] Because article VIII,

---

8. *See supra* notes 5 and 6.

9. Appellant argues that article VIII, section 3 is not self-executing and thus cannot itself repeal

section 3 and HRS § 246A–2 cover the whole subject of the counties' real property taxation power and embrace the entire law on the matter, HRS § 248–2, by limiting the County's real property taxation powers, is in conflict and is repealed by implication.

B. *Maui County's Differential Tax Rate Under Ordinance 2569 Does Not Violate the Equal Protection Clauses of Either the Hawai'i or United States Constitutions.*

Appellant next asserts that because Ordinance 2569 classifies appellant's properties based on "ownership" rather than "use," appellant is deprived of the equal protection of the law. We disagree.

It is well-settled that, in analyzing alleged equal protection violations, classifications that are neither "suspect" nor "quasi-suspect" are subject to the rational basis test. *Dubin v. Wakuzawa*, 89 Hawai'i 188, 192, 970 P.2d 496, 500 (1998) (citation omitted); *Del Rio v. Crake*, 87 Hawai'i 297, 304, 955 P.2d 90, 98 (1998) (citation omitted). Under the rational basis test, "the court essentially asks whether a statute rationally furthers a legitimate state interest." *Dubin*, 89 Hawai'i at 193, 970 P.2d at 501 (citing *Housing Fin. & Dev. Corp. v. Castle*, 79 Hawai'i 64, 86, 898 P.2d 576, 598 (1995)).

In analyzing tax classifications under the equal protection clause, this court has stated that "where . . . discrimination is of a 'non-suspect' or 'non invidious' variety, such discrimination is not unconstitutional if there is any rational basis for such classification. Such discrimination is only a violation of equal protection if it is totally arbitrary or capricious." *In re Pacific Marine & Supply Co., Ltd.*, 55 Haw. 572, 581, 524 P.2d 890, 896

(1974). Under this "rational basis test," it is the court's function "only to seek to adduce any state of facts that can reasonably sustain the classification statute . . . challenged[.]" *Id.* at 582, 524 P.2d at 896. "If the classification statute . . . is arguably tailored to serve the [state] policy, it is not arbitrary or capricious, and hence is constitutional under the equal protection clauses." *Id. See also Allegheny Pittsburgh Coal Co. v. County Comm'n of Webster County*, 488 U.S. 336, 344, 109 S.Ct. 633, 102 L.Ed.2d 688 (1989) ("if the selection or classification is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the law.") (citation omitted); *Welch v. Henry*, 305 U.S. 134, 145, 59 S.Ct. 121, 83 L.Ed. 87 (1938) ("Possible differences in tax burdens, not shown to be substantial, or which are based on discrimination not shown to be arbitrary or capricious, do not fall within the constitutional prohibition.") (citation omitted), rehearing denied, 305 U.S. 675, 59 S.Ct. 250, 83 L.Ed. 437 (1938).

For at least two reasons, the classification of time share units into the "Hotel Resort" category is reasonably related to the policy underlying Ordinance 2569. The first relates to the County's stated purpose for enacting the ordinance; the second relates to the practical burden placed on the properties by time share owners.

The stated purpose of Ordinance 2569, according to the Council of the County of Maui Budget and Finance Committee report, is to "uniformly classify time share units as hotel resort" in order to eliminate disproportionate tax burdens within that classification.[10] According to the Council, prior to the enactment of Ordinance 2569, a large portion of time share units was classified as "Apart-

HRS § 248–2. Nowhere in article VIII, section 3 does it state that an implementing statute is required. Even assuming, *arguendo*, that this amendment was not self-executing, this point is rendered moot because HRS § 246A–2 provides for exactly the same transfer of taxation powers. The outcome, therefore, would be the same.

10. Specifically, the Budget and Finance Committee stated that:
   . . . in 1984, the Real Property Tax Division began considering classifying time share units

by use. As a result, a large portion of time share units was classified as apartment while others maintained their hotel resort classification. As of Fiscal Year 1997, only 21 percent of time share units was [sic] classified as hotel resort. The current Administration would like to uniformly classify time share units as hotel resort, and requested that the proposed bill be passed to clarify the classification.
Council of the County of Maui, Budget and Finance Comm. Rep. No. 97–101 at 13 (1997).

ment" while 21% remained in the "Hotel Resort" classification. The County's reclassification, because it is tailored to serve the policy of eliminating disparate tax treatment, is neither arbitrary nor capricious.

Appellant nevertheless contends that, because it uses its units personally and does not rent to third parties, the County's classification of its units as "Hotel Resort" rather than "Apartment" is impermissibly based upon "ownership" rather than "actual use." In this regard, appellant argues that it should be classified as "Apartment" in spite of the fact that it is subject to a time share plan.

Appellant fails to acknowledge that the "Apartment" and "Hotel Resort" classifications are based upon use. Although time share owners may use their units personally as owners, they do not own outright and exclusively either as tenants in common or joint tenants; they own subject to a qualified time share plan. As such, the units are used subject to the rights and interests of the other owners as set forth in HRS § 514E–1.[11]

Multiple owners subject to a time share plan, although vested with ownership rights in their time slots, put the units to use much like transient hotel guests, resulting in intensive use of the property. The "Hotel Resort" classification thus legitimately applies to properties whose actual use is transient or short-term, regardless of whether the units are used personally. That being the case, higher tax rates as applied to time share units are rationally related to the ordinance's purpose, and do not violate the equal protection clauses of the Hawai'i and United States Constitutions.

C. *Maui Ordinance 2569 Did Not Render MCC Section 3.48.305.C Unconstitutionally Vague.*

▇▇▇ Appellant next argues that Ordinance 2569 created an "inherent vagueness" within the language of MCC § 3.48.305.C. Essentially, appellant asserts that time share

owners who use their units for personal use, rather than rent them to third parties, would be required to "guess" whether their property is subject to taxation as an "Apartment" or a "Hotel Resort" under MCC 3.48.305.[12] This argument is meritless.

▇▇▇ "When a statute is not concerned with criminal conduct or first amendment considerations, the court must be fairly lenient in evaluating a claim of vagueness." *Doe v. Staples,* 706 F.2d 985, 988 (6th Cir. 1983) (citing *Exxon Corp. v. Busbee,* 644 F.2d 1030 (5th Cir.1981), *cert. denied,* 454 U.S. 932, 102 S.Ct. 430, 70 L.Ed.2d 239 (1981)). As the United States Court of Appeals for the Sixth Circuit explained,

> [T]o constitute a deprivation of due process, [the civil statute] must be "so vague and indefinite as really to be no rule or standard at all." *A.B. Small Co.,* 267 U.S. [233], 239, 45 S.Ct. 295, 69 L.Ed. 589 (1925). To paraphrase, uncertainty in this statute is not enough for it to be unconstitutionally vague; rather, it must be substantially incomprehensible. 644 F.2d at 1033.

*Id.* (some citations and brackets omitted) (some brackets added). *See also* Sutherland, *Statutory Construction* § 21.16 (5th ed.) ("Where economic or commercial interests are involved, a lesser standard is utilized for determining vagueness.") (Citation omitted.); *cf. In re Wall,* 295 N.W.2d 455, 457 (Iowa 1980) (the degree of specificity constitutionally required of non-criminal statutes will vary, depending on "the various interests affected, the purpose underlying the enactment in question and the potential deprivation which could result from its application.").

The definition of "Hotel Resort" under MCC § 3.48.305.C.4 is express and unambiguous. Units subject to a time share plan as defined in HRS § 514E–1 are specifically included in its scope. Moreover, there is no language indicating that the County intended to differentiate between time share owners

---

11. *See supra* note 1.

12. Appellant erroneously applies a void-for-vagueness standard applicable to criminal stat-

utes. This standard is clearly inappropriate to analyze the tax classification statute at issue.

**344**

who use their units personally from those who rent to tenants.

Appellant's creative arguments based on "vagueness" fail to acknowledge that the "Apartment" and "Hotel Resort" classifications are based upon use. As discussed above, the "Hotel Resort" classification is intended to apply to properties whose actual use is transient or short-term even though the owners may use the units personally.[13] Given the express definition of "Hotel Resort" under MCC § 3.48.305.C.2, read together with the pre-existing definition of "Apartment" in MCC § 3.48.305.C.2, there is no ambiguity with respect to the classification of "time share unit." Accordingly, there is no plausible basis to Appellant's position relating to "vagueness."

> D. *The Retroactive Application of Maui Ordinance 2569 Did Not Deprive Appellant of Vested Rights.*

Lastly, appellant argues that, because it acquired a vested right in its "Apartment" classification, the County's retroactive change in that classification by way of Ordinance 2569 was unconstitutional. We disagree.

■■■■■ The validity of retroactive tax legislation under the due process clause depends on whether, in light of "the nature of the tax and the circumstances in which it is laid," the law is "so harsh and oppressive as to transgress the constitutional limitation." *Welch*, 305 U.S. at 147, 59 S.Ct. 121. *See also Tax Appeal of County of Maui v. KM Hawaii, Inc.*, 81 Hawai'i 248, 257 n. 12, 915 P.2d 1349, 1358 n. 12 (1996) ("the retroactive assessment of a tax increase does not necessarily deny due process to those whose taxes are increased, though beyond some temporal point the retroactive imposition of a significant tax burden may be 'so harsh and oppressive as to transgress the constitutional limitation,' depending on 'the nature of the tax and the circumstances in which it is

laid.'") (quoting *McKesson Corp. v. Division of Alcoholic Beverages and Tobacco*, 496 U.S. 18, 40 n. 23, 110 S.Ct. 2238, 110 L.Ed.2d 17 (quoting *Welch*, 305 U.S. at 147, 59 S.Ct. 121)).

In *United States v. Carlton*, 512 U.S. 26, 114 S.Ct. 2018, 129 L.Ed.2d 22 (1994), the United States Supreme Court set forth two primary factors to be considered when determining whether retroactive taxation violates the due process clause.[14] First, the court asks whether the legislature's purpose in enacting the legislation was "illegitimate or arbitrary." *Id.* at 32, 114 S.Ct. 2018. Second, the court examines whether the legislature acted promptly and established "only a modest period of retroactivity." *Id.*

Here, the County's purpose for enacting Ordinance 2569 was neither illegitimate nor arbitrary. As described above, the County enacted Ordinance 2569 in order to create uniformity in the tax treatment of time share units. The County, moreover, established a reasonable period of retroactivity of only slightly over six months from June 13, 1997 to January 1, 1997.

■■■■■ In any case, appellant did not acquire vested rights in its "Apartment" classification. A vested right, "entitled to be protected from legislation, must be something more than a mere expectation based upon an anticipated continuance of the existing law[.]" 16B Am.Jur. *Constitutional Law*, § 703 (2d. ed.1998). "[I]t must have become a title, legal or equitable, to the present or future enjoyment of property; . . . and if before rights become vested in particular individuals, the convenience of the state induces amendment or repeal of certain laws, these individuals have no cause to complain." *Id. See also United States v. Darusmont*, 449 U.S. 292, 298, 101 S.Ct. 549, 66 L.Ed.2d 513 (1981) ("[n]obody has a vested right in the rate of taxation, which may be retroactively changed at the will of Congress at least for

---

13. *See supra* Part III.B.

14. The Court noted that the "harsh and oppressive" formulation under *Welch*, applicable to tax statutes with retroactive effect, "is the same as that generally applicable to retroactive economic legislation." *Id.* at 30, 114 S.Ct. 2018. Due

Process requirements are satisfied, observed the Court, if the retroactive application of the legislation "is itself justified by a rational legislative purpose." *Id.* at 31, 114 S.Ct. 2018 (citation omitted).

periods of less than twelve months ....") (citation omitted).

Nor did appellant acquire a vested right to a refund based upon the law as it existed at the time its properties were to be assessed in January 1997. As emphasized in *Carlton*, detrimental reliance on a tax classification alone is insufficient to establish a constitutional right.[15] *See Carlton*, 512 U.S. at 33, 114 S.Ct. 2018.

Here, appellant's reliance on the property tax classification of "Apartment," without more, does not constitute a violation of due process. Because appellant did not acquire a vested right in a specific tax rate and because there is no evidence that appellant would have been entitled to a refund had Ordinance 2569 not been passed, the County's retroactive enactment of Ordinance 2569 did not infringe upon appellant's due process rights.

## IV. CONCLUSION

For the foregoing reasons, we affirm the Tax Appeal Court's judgment in favor of appellee Maui County and against appellant Gardens at West Maui Vacation Club.

---

**15.** The Court reasoned that "the detrimental reliance principle is not limited to retroactive legislation. An entirely prospective change in the law may disturb the relied-upon expectations of individuals, but such a change would not be deemed therefore to violative of due process." *Carlton*, 512 U.S. at 33–34, 114 S.Ct. 2018.