**Electronically Filed
Supreme Court
SCAP-22-0000587
23-APR-2024
10:07 AM
Dkt. 56 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

SCAP-22-0000587

In the Matter of the Tax Appeal of
WEST MAUI RESORT PARTNERS LP,
Appellant-Appellant,

vs.

COUNTY OF MAUI,
Appellee-Appellee.

APPEAL FROM THE TAX APPEAL COURT
(CAAP-22-0000587; CASE NO. 1CTX-21-0000071 (Lead Case)
AND CONSOLIDATED CASES:
1CTX-21-0000071 THROUGH 1CTX-21-0000073;
1CTX-21-0000075 THROUGH 1CTX-21-0000078;
1CTX-21-0000080 THROUGH 1CTX-21-0000117;
1CTX-21-0000119 THROUGH 1CTX-21-0000297;
1CTX-21-0000299 THROUGH 1CTX-21-0000397;
1CTX-21-0000399 THROUGH 1CTX-21-0000430;
and 1CTX-21-0000432 THROUGH 1CTX-21-0000489)

SCAP-23-0000139

In the Matter of the Tax Appeal of
OCEAN RESORT VILLAS VACATION OWNERS ASSOCIATION,
Appellant-Appellant,

vs.

COUNTY OF MAUI,
Appellee-Appellee.

APPEAL FROM THE TAX APPEAL COURT
(CAAP-23-0000139; CASE NO. 1CTX-21-0000569 (Lead Case)
AND CONSOLIDATED CASES:
1CTX-21-0000570 THROUGH 1CTX-21-0000584;
1CTX-21-0000585; 1CTX-21-0000586; 1CTX-21-0000588;
1CTX-21-0000590; 1CTX-21-0000591; 1CTX-21-0000593;
1CTX-21-0000595; 1CTX-21-0000597; 1CTX-21-0000598;
1CTX-21-0000600; 1CTX-21-0000601; 1CTX-21-0000603;
1CTX-21-0000604; 1CTX-21-0000606; 1CTX-21-0000607;
1CTX-21-0000609; 1CTX-21-0000610; 1CTX-21-0000612;
1CTX-21-0000614; 1CTX-21-0000615; 1CTX-21-0000617;
1CTX-21-0000619; 1CTX-21-0000620; 1CTX-21-0000622;
1CTX-21-0000624; 1CTX-21-0000627; 1CTX-21-0000628;
1CTX-21-0000629; 1CTX-21-0000630; 1CTX-21-0000633;
1CTX-21-0000635; 1CTX-21-0000637; 1CTX-21-0000638;
1CTX-21-0000641; 1CTX-21-0000643; 1CTX-21-0000645;
1CTX-21-0000647; 1CTX-21-0000651; 1CTX-21-0000653;
1CTX-21-0000655; 1CTX-21-0000657; 1CTX-21-0000658;
1CTX-21-0000659; 1CTX-21-0000662; 1CTX-21-0000665;
1CTX-21-0000675; 1CTX-21-0000677; 1CTX-21-0000680;
1CTX-21-0000683; 1CTX-21-0000686; 1CTX-21-0000689;
1CTX-21-0000693; 1CTX-21-0000695; 1CTX-21-0000696;
1CTX-21-0000698 THROUGH 1CTX-21-0000703;
1CTX-21-0000708; 1CTX-21-0000711; 1CTX-21-0000714;
1CTX-21-0000717; 1CTX-21-0000720; 1CTX-21-0000722;
1CTX-21-0000725; 1CTX-21-0000728; 1CTX-21-0000732;
1CTX-21-0000734; 1CTX-21-0000738; 1CTX-21-0000740;
1CTX-21-0000743; 1CTX-21-0000746; 1CTX-21-0000748;
1CTX-21-0000752; 1CTX-21-0000755; 1CTX-21-0000760;
1CTX-21-0000765; 1CTX-21-0000774; 1CTX-21-0000783;
1CTX-21-0000808; 1CTX-21-0000815; 1CTX-21-0000824;
1CTX-21-0000828; 1CTX-21-0000831; 1CTX-21-0000835;
1CTX-21-0000837; 1CTX-21-0000846; 1CTX-21-0000849;
1CTX-21-0000901; 1CTX-21-0000904; 1CTX-21-0000906;

1CTX-21-0000909; 1CTX-21-0000910; 1CTX-21-0000917;
1CTX-21-0000919; 1CTX-21-0000922; 1CTX-21-0000924;
1CTX-21-0000927; 1CTX-21-0000928; 1CTX-21-0000931;
1CTX-21-0000933; 1CTX-21-0000935; 1CTX-21-0000939;
1CTX-21-0000941; 1CTX-21-0000958; 1CTX-21-0000960;
1CTX-21-0000963; 1CTX-21-0000965; 1CTX-21-0000968;
1CTX-21-0000972; 1CTX-21-0000977; 1CTX-21-0000980;
1CTX-21-0001008; 1CTX-21-0001010; 1CTX-21-0001012;
1CTX-21-0001015; 1CTX-21-0001017; 1CTX-21-0001019;
1CTX-21-0001023; 1CTX-21-0001025; 1CTX-21-0001029;
1CTX-21-0001069; 1CTX-21-0001071; 1CTX-21-0001073;
1CTX-21-0001075; 1CTX-21-0001076; 1CTX-21-0001078;
1CTX-21-0001080; 1CTX-21-0001082; 1CTX-21-0001084;
1CTX-21-0001094; 1CTX-21-0001097; 1CTX-21-0001099;
1CTX-21-0001100; 1CTX-21-0001105; 1CTX-21-0001106;
1CTX-21-0001117; 1CTX-21-0001119; 1CTX-21-0001122;
1CTX-21-0001123; 1CTX-21-0001125; 1CTX-21-0001129;
1CTX-21-0001131; 1CTX-21-0001135; 1CTX-21-0001136;
1CTX-21-0001139; 1CTX-21-0001140; 1CTX-21-0001143;
1CTX-21-0001144; 1CTX-21-0001146; 1CTX-21-0001149;
1CTX-21-0001151; 1CTX-21-0001153 THROUGH 1CTX-21-0001243;
1CTX-21-0001247; 1CTX-21-0001250; 1CTX-21-0001252;
1CTX-21-0001254; 1CTX-21-0001256; 1CTX-21-0001258;
1CTX-21-0001260; 1CTX-21-0001263; 1CTX-21-0001264;
1CTX-21-0001267; 1CTX-21-0001269; 1CTX-21-0001271;
1CTX-21-0001273; 1CTX-21-0001275; 1CTX-21-0001277;
1CTX-21-0001280; 1CTX-21-0001282; 1CTX-21-0001284;
1CTX-21-0001286; 1CTX-21-0001288; and 1CTX-21-0001289)

APRIL 23, 2024

RECKTENWALD, C.J., McKENNA, AND EDDINS, JJ.,
CIRCUIT JUDGE OCHIAI AND CIRCUIT JUDGE SOMERVILLE,
ASSIGNED BY REASON OF VACANCIES

OPINION OF THE COURT BY RECKTENWALD, C.J.

## I.  INTRODUCTION

Appellants West Maui Resort Partners LP (West Maui Resort) and Ocean Resort Villas Vacation Owners Association (Ocean Resort), plan managers for nearly 700 time share units, appealed their Maui County tax assessments to the Tax Appeal

Court, which granted summary judgment for the County in both cases. They argue on appeal that the County's tax assessments are unconstitutional and violated the County's own code. In particular, they allege that the County's creation of a Time Share real property tax classification acts as an illegal tax on time share visitors. Appellants also contend that time share units and hotel units have an identical "use" for real property purposes, and therefore, should be taxed in the same real property tax classification. In other words, Appellants want to have their time share properties taxed at the same, lower tax rate as that of hotel and resort properties.

We are not persuaded by Appellants' arguments. The County acted within its constitutional authority to tax real property in creating the Time Share classification and taxing properties assigned to it. The Hawai'i Constitution grants broad powers of real property taxation to the counties under article VIII, section 3, including counties' ability to create real property tax classifications. Neither the Hawai'i Constitution nor the Maui County Code requires that the County consider only real property use when creating those classifications. Further, time share unit owners are not a protected class and do not otherwise receive heightened protections under the equal protection clauses of the Hawai'i or U.S. Constitution. The County had several legitimate policy purposes rationally related

to the creation of the Time Share classification, including raising revenue for infrastructure maintenance and addressing time share properties' unique impacts on the community.

We therefore affirm the Tax Appeal Court's summary judgment for the County in both cases.

## II.   BACKGROUND

### A.   Factual Background

The Maui County Code (MCC) outlines the real property classifications in the County and how real property is classified and valued for real property tax purposes.  At the time of the assessments at issue, MCC § 3.48.305 (2021)[1] stated:

> A.    Except as otherwise provided in subsection B, real property must be classified, upon consideration of its highest and best use, into the following general classes:
>
> > 1. Owner-occupied.
> > 2. Non-owner-occupied.
> > 3. Apartment.
> > 4. Hotel and resort.
> > 5. Time share.
> > 6. Short-term rental.
> > 7. Agricultural.
> > 8. Conservation.
> > 9. Commercial.
> > 10. Industrial.
> > 11. Commercialized residential.
>
> B.    In assigning land to one of the general classes, the director must give major consideration to: the districting established by the land use commission in accordance with chapter 205, Hawai'i Revised Statutes; the districting established by the County in its general plan and comprehensive zoning ordinance; use classifications

---

[1]    Except as otherwise noted, we refer to the MCC as it read in 2021.  Ocean Resort appeals its 2021 tax assessments, and West Maui Resort appeals its 2020 tax assessments.  There were no substantive differences between the 2020 and 2021 cited sections of the MCC that affect the analysis below.

5

established in the Hawai'i state plan; and other factors that influence highest and best use; except that:

. . .

> 5. Real property that is subject to a time share plan as defined in section 514E-1, Hawaiʻi Revised Statutes, as amended, must be classified as "time share."

MCC § 3.48.290 described, the County Finance Director's role in real property tax assessments:

> The director must cause the fair market value of all taxable real property to be determined and annually assessed by the market data and cost approaches to value using appropriate systematic methods suitable for mass valuation of properties for taxation purposes, so selected and applied to obtain, as far as possible, uniform and equalized assessments throughout the County . . . .

In 1986, the State created the transient accommodation tax (TAT) to "'provide money that can be made available to the counties to improve tourist-related infrastructure.'" Travelocity.com, L.P. v. Dir. of Tax'n, 135 Hawai'i 88, 121, 346 P.3d 157, 190 (2015) (citation omitted); see 1986 Haw. Sess. Laws Act 340, § 1 at 758-64. The TAT is a tax on transient accommodation units imposed directly on individual visitors, including those at both time share and hotel and resort units. For hotel guests, the TAT is assessed based on "the gross rental or gross rental proceeds derived from furnishing transient accommodations." Hawai'i Revised Statutes (HRS) § 237D-2(a) (2017). For time share occupants, the TAT is assessed based on the unit's fair market rental value. HRS § 237D-2(c). Fair market rental value is defined as "an amount equal to one-

6

half of the gross daily maintenance fees that are paid by the owner and are attributable to the time share unit located in Hawai'i." HRS § 237D-1 (2017).

Before 1997, the County classified time share units in either the Apartment or Hotel and Resort real property classifications. In 1997, the County passed Ordinance 2569, reclassifying all time share units into the Hotel and Resort classification. We upheld that ordinance in Gardens at W. Maui Vacation Club v. Cnty. of Maui, 90 Hawai'i 334, 978 P.2d 772 (1999).

In 2004, the County's Budget and Finance Committee proposed a bill to the Council entitled "A BILL FOR AN ORDINANCE ESTABLISHING A REAL PROPERTY TAX CLASSIFICATION FOR TIME SHARES," and the relevant committee report stated:

> The purpose of the draft bill is to add a new "Time Share" real property tax classification.
>
> . . . .
>
> Your Committee notes that the draft bill removes Time Share properties from the Hotel and Resort real property tax classification, and establishes a new classification for Time Share properties. . . . Your Committee further notes that Time Share properties are transient units subject to a time share plan under Section 514E-1, [HRS].
>
> Your Committee recognized that the application of the Transient Accommodations Tax (TAT) under HRS Chapter 237D is different for Hotel and Resort properties and Time Share properties. The TAT for Time Share properties is 7.25 percent of the unit's fair market rental value. Under HRS Section 237D-1 "fair market rental value means an amount equal to one-half the gross daily maintenance fees that are paid by the owner . . ." The TAT for Hotel and Resort properties is 7.25 percent of the gross rental proceeds. With the application of these formulas, Time Share

> properties generate considerably less TAT revenue per unit
> than Hotel and Resort properties do.

Council of the County of Maui, Budget and Fin. Comm. Rep. No. 04-187 at 1-2 (Nov. 5, 2004) (third ellipsis in original), https://www.mauicounty.gov/Archive/ViewFile/Item/8943, [https://perma.cc/QJL6-Q6WC].

In November 2004, the Council added the Time Share classification to MCC § 3.48.305 and amended section 2.C. to read:

> Units occupied by transient tenants for periods of less
> than six consecutive months and units subject to a time
> share plan as defined in section 514E-1, [HRS], as amended,
> shall be classified as "time share."

Maui County, Haw., Ordinance 3227 (2004).

In 2005, the Council considered a bill establishing a taxation rate for the Time Share classification, which would be higher than the Hotel and Resort classification rate. The relevant Budget and Finance Committee report stated "[i]n 2004, the Council established the Time Share classification to address the need for owners and occupants of time share units to pay a more equitable share of taxes for County services they utilize and the economic impact they place on the surrounding community." Council of the County of Maui, Budget and Fin. Comm. Rep. No. 05-63 (as amended) at 10 (May 16, 2005), https://www.mauicounty.gov/Archive/ViewFile/Item/9582 [https://perma.cc/ZVD9-D37N].

**B.     Procedural Background**

West Maui Resort appealed its 2020 tax assessment to the County Board of Review (the Board).  In 2020, the Time Share and Hotel and Resort tax rates per thousand dollars of net taxable assessed valuation were $14.40 and $10.70, respectively. Maui County Res. 20-72 (2020), https://www.mauicounty.gov/DocumentCenter/View/122153/Reso-20-072 [https://perma.cc/S8K4-KXGB].

Ocean Resort appealed its 2021 tax assessment to the Board.  In 2021, the Time Share and Hotel and Resort tax rates per thousand dollars of net taxable assessed valuation were $14.60 and $11.75, respectively.  Maui County Res. 21-83 (2021), https://www.mauicounty.gov/DocumentCenter/View/127521/Reso-21-083 [https://perma.cc/3F47-MAGQ].

The Board denied the appeals.  West Maui Resort and Ocean Resort then appealed to the Tax Appeal Court.

The County filed a motion for summary judgment in both cases.  Ocean Resort and West Maui Resort filed motions for summary judgment, advancing similar arguments.

Ocean Resort argued the Time Share classification was illegal under the MCC and the Hawai'i and U.S. Constitutions.  It also alleged that the County arbitrarily set the Time Share classification rate and claimed it was entitled to a refund of the difference between the Time Share and Hotel and Resort tax

9

rates.  Ocean Resort argued the County established the Time Share classification and the related rate for the improper purpose of collecting a de facto TAT that was imposed on individual visitors.

Ocean Resort contended that state law preempted the County's Time Share classification and rate because they conflict with the TAT's "comprehensive state statutory scheme," citing Ruggles v. Yagong, 135 Hawai'i 411, 412, 353 P.3d 953, 954 (2015) (holding municipal ordinance is preempted by state law "if (1) it covers the same subject matter embraced within a comprehensive state statutory scheme disclosing an express or implied intent to be exclusive and uniform throughout the state or (2) it conflicts with state law."  Ocean Resort claimed the Time Share classification conflicted with state law because the TAT is imposed using specific rates, and the Time Share classification impermissibly duplicates TAT assessments.  It emphasized that the TAT already supports counties' infrastructure costs related to tourism, and therefore the County could not create another tax addressing the same concerns.

Ocean Resort also argued that the County set the Time Share classification rate arbitrarily.  It argued that "given that the County just a short time earlier [in Gardens] had argued that timeshares were properly taxed at the same rate as

hotels and resorts, a timeshare tax rate more than 68% higher than hotels is irrational," and therefore bore no rational relationship to a legitimate state purpose.[2]

West Maui Resort also contended that the difference between the Hotel and Resort and Time Share classification tax rates operated as a de facto tax on time share visitors, and cited Stewarts' Pharmacies, Ltd. v. Fase, 43 Haw. 131, 144 (1959) ("The nature of the tax that a law imposes is not determined by the label given to it but by its operating incidence."). It argued that time share properties already paid their fair share of taxes under the Hotel and Resort classification and the TAT.

Next, West Maui Resort argued the County's classification of its time share units under the Time Share classification violated the equal protection clauses of the Hawaiʻi and U.S. Constitutions. It claimed the County could not demonstrate a change in the time share units' use that justified reclassifying the units between 1999, when Gardens was decided, and 2005, when the Time Share classification was created. Thus, West Maui Resort contended that the County violated the equal

---

[2] Prior to the Time Share classification creation, time share units were taxed under the Hotel and Resort classification, which had a tax rate of $8.30 per one thousand dollars of net taxable assessed valuation in 2005. When the Time Share classification was created, the related rate was $14 per one thousand dollars of net taxable assessed valuation. Maui County Res. 5-72 (2005), https://www.mauicounty.gov/DocumentCenter/View/7518/Reso-05-072 [https://perma.cc/2PHW-F5GT].

protection clauses by classifying hotel and time share properties differently, even though they had the same use.

Finally, West Maui Resort argued the Time Share classification violated MCC §§ 3.48.305.A. and C. because the County did not consider either "highest and best use" or "actual use" when creating the real property classification or when assigning its units to the Time Share classification.

The County argued primarily that article VIII, section 3 of the Hawai'i Constitution authorizes counties to tax real property and that power "includes the authority to establish general classifications of real property . . . for taxation at differential rates." The County further argued the Time Share classification "is a levy on an ownership interest in real property and based on the annually assessed property value," and thus, is an appropriate ad valorem tax on real property. In contrast, the TAT is a point-of-sale tax levied "on the temporary duration of a hotel visitor's stay, and based on an income transaction for that stay." Therefore, the County argued, it was constitutional to create the Time Share classification and impose a specific tax rate for that classification under article VIII, section 3's broad grant of real property tax authority to the counties.

The County also argued the MCC did not limit the County's creation of real property classifications. It

contended that MCC § 3.48.305.A.'s requirement to consider "highest and best use" applies only to the assignment of parcels to a classification, but not to the County's creation of classifications.

With regard to Appellants' equal protection challenges, the County urged the Tax Appeal Court to apply rational basis review because (1) residency and property ownership were not suspect classifications, (2) West Maui Resort had neither a property interest in nor a fundamental right to a tax classification, and (3) Appellants' allegation of animus against time share users was irrelevant to the constitutional analysis.

The County argued that its creation of the Time Share classification was reasonably tailored to the legitimate policy aims of (1) collecting more tax revenue from time share properties for their use of services and infrastructure impacts, and (2) disincentivizing conversions from hotel to timeshare use. It emphasized that in relation to tax policy, courts' role is not to "evaluate the wisdom of such state policy, but only to discover that some policy does exist." In re Pac. Marine & Supply Co., Ltd., 55 Haw. 572, 582, 524 P.2d 890, 897 (1974) (footnote omitted).

Moreover, the County argued that residency is not a suspect classification, citing Daly v. Harris, 215 F. Supp. 2d

13

1098, 1113 (D. Haw. 2002), aff'd, 117 F. App'x 498 (9th Cir. 2004) (holding that while ordinance "on its face, classifie[d] on the basis of residency, non-residents are not a judicially recognized suspect class") and Haw. Boating Ass'n v. Water Transp. Facilities Div., Dep't of Transp., State of Haw., 651 F.2d 661, 665 (9th Cir. 1981) (preferential rates of mooring for state residents in recreational boat harbors was not "a significant penalty on the right to travel").

The County denied any discriminatory intent towards time share owners or nonresidents, citing Allied Stores of Ohio, Inc. v. Bowers, 358 U.S. 522, 530 (1959) (holding federal equal protection clause not violated because "the discrimination against residents is not invidious nor palpably arbitrary because, as shown, it rests not upon the 'different residence of the owner,' but upon a state of facts that reasonably can be conceived to constitute a distinction, or difference in state policy, which the State is not prohibited from separately classifying for purposes of taxation").

At a hearing on West Maui Resort's and the County's cross summary judgment motions, the Tax Appeal Court tried to clarify who paid the challenged tax assessments:

> THE COURT: [I]n your statements, there are at least three individuals or persons that might be paying this tax assessment on timeshare. It could be West Maui Resorts, it could be the owners of the slots, and it could be the people that rent the timeshare. So which one is paying for the use of this timeshare?

14

> [West Maui Resort's counsel]: <u>West Maui Partners is the</u>
> <u>taxpayer of record.</u>

(Emphasis added.)[3]

The Tax Appeal Court granted the County's summary judgment motion and denied West Maui Resort's cross-motion. It concluded that the Time Share classification "is indeed consistent with the . . . provisions of [Hawai'i Constitution] [a]rticle VIII, [s]ection 3 that restricts the taxing authority for the County to imposing a tax upon real property." The court also concluded that the Time Share Classification acted as a "tax upon real property," and not a de facto TAT, as Appellants argued. With regard to the equal protection challenge, the court determined that heightened scrutiny did not apply. It found a rational basis for the creation of the Time Share classification because the County considered several legitimate policy concerns, including:

> No. 1, timeshare units are subject to a timeshare plan, which distinguishes timeshare properties from all other properties on Maui.
>
> No. 2, there was an increased construction of timeshare units.
>
> No. 3, there was increased conversion of hotel resort units to timeshare units.
>
> And No. 4, the timeshare properties were imposing an increased burden upon the County infrastructure, which was not being borne fairly by the timeshare unit owners.

---

3    The Honorable Gary W.B. Chang presided in both cases.

15

A week later, the Tax Appeal Court heard arguments on the County's and Ocean Resort's respective motions for summary judgment, and it ruled for the County. It found that when considering the Time Share classification's creation, the Council "in addition to TAT impacts, [was] also very concerned about the community impact of timeshare [units] and how that affected the Maui County's responsibilities to provide infrastructure." Thus, the County "considered a broad spectrum of impacts that resulted from this developing timeshare industry and how it was not only changing population centers, but also modifying where tax revenues could be generated for the business" of the County.

The court concluded that the County considered time share properties' actual use, as well as revenue generation and community impacts, when creating the Time Share classification, and therefore the County did not violate the MCC's "requirement that in establishing classifications that the Maui County consider highest and best use . . . ."

C.  **Appellate Proceedings**

West Maui Resort and Ocean Resort appealed to the Intermediate Court of Appeals (ICA), and the cases were transferred to this court and consolidated. After accepting transfer in West Maui Resort Partners LP, we ordered

16

supplemental briefing on the jurisdictional question of whether West Maui Resort timely appealed to the ICA.

The parties generally advance the same arguments as below.

## III.   STANDARDS OF REVIEW

### A.   Summary Judgment

> This court reviews an award of summary judgment de novo, under the same standards applied by the trial court. . . . Therefore, summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.
>
> . . .
>
> Moreover, it is well settled that, in reviewing the decision and findings of the Tax Appeal Court, a presumption arises favoring its actions which should not be overturned without good and sufficient reason. The appellant has the burden of showing that the decision of the Tax Appeal Court was clearly erroneous. . . . Inasmuch as the facts here are undisputed and the sole question is one of law, we review the decision of the Tax Appeal Court under the right/wrong standard.

Kamikawa v. Lynden Air Freight, Inc., 89 Hawai'i 51, 54, 968 P.2d 653, 656 (1998) (internal quotations marks, emphases, and citations omitted).

### B.   Ordinance Interpretation

"When interpreting a municipal ordinance, we apply the same rules of construction that we apply to statutes." Ocean Resort Villas Vacation Owners Ass'n v. Cnty. of Maui, 147 Hawai'i 544, 553, 465 P.3d 991, 1000 (2020) (citation omitted).

> Statutory interpretation is a question of law reviewable de novo. This court's statutory construction is guided by established rules:
>
> > First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.

Id. at 552–53, 465 P.3d at 999–1000.

## C.    Constitutional Law

"We answer questions of constitutional law by exercising our own independent constitutional judgment based on the facts of the case.  Thus, we review questions of constitutional law under the right/wrong standard."  Gardens, 90 Hawai'i at 339, 978 P.2d at 777 (citation omitted).

### IV.   DISCUSSION

## A.    This Court Has Jurisdiction Over West Maui Resort's Appeal Under the "Unique Circumstances" Doctrine

On August 16, 2022, the Tax Appeal Court entered orders denying West Maui Resort's summary judgment motion and granting the County's summary judgment motion.  Thirteen days later, on August 29, 2022, West Maui Resort filed a request for entry of judgment and submitted a proposed final judgment.  The County did not oppose entry of the judgment and the Tax Appeal Court entered final judgment on September 8, 2022, "[p]ursuant

18

to Rule 1(b) of the Rules of the Tax Appeal Court of the State of Hawai'i and Rules 54 and 58 of the Hawai'i Rules of Civil Procedure . . . ." The final judgment "resolve[d] all claims and appeals" and dismissed with prejudice "[a]ny and all remaining claims or appeals, if any . . . ." On October 7, 2022, West Maui Resort filed its Notice of Appeal with the ICA.

Strictly interpreting existing law, West Maui Resort's notice of appeal to the ICA was untimely. However, we may exercise jurisdiction over the case under the "unique circumstances" doctrine adopted in Cabral v. State, 127 Hawai'i 175, 180, 277 P.3d 269, 274 (2012).

HRS § 232-19 (2017) provides the procedure for appeals from the Tax Appeal Court and states:

> Any taxpayer or county aggrieved or the assessor may appeal to the intermediate appellate court, subject to chapter 602, from the decision of the tax appeal court by filing a written notice of appeal with the tax appeal court and depositing therewith the costs of appeal within thirty days after the filing of the decision. The appeal shall be considered and treated for all purposes as a general appeal and shall bring up for determination all questions of fact and all questions of law, including constitutional questions, involved in the appeal. A notice of appeal may be amended at any time up to the final determination of the tax liability by the last court from which an appeal may be taken. The appellate court shall enter a judgment in conformity with its opinion or decision.

(Emphases added.)

West Maui Resort contends that it requested final judgment because it believed that, under Hawai'i Rules of Civil

Procedure (HRCP) Rule 58 (2020), the final judgment rule

applied.  HRCP Rule 58 provides:

> Unless the court otherwise directs and subject to the provisions of [HRCP] Rule 54 . . . and Rule 23 of the Rules of the Circuit Courts, the prevailing party shall prepare and submit a proposed judgment.  The filing of the judgment in the office of the clerk constitutes the entry of the judgment; and the judgment is not effective before such entry.  The entry of the judgment shall not be delayed for the taxing of costs. Every judgment shall be set forth on a separate document.

West Maui Resort requested entry of final judgment

after the Tax Appeal Court entered the summary judgment orders,

relying on the Rules of the Tax Appeal Court of the State of

Hawai'i (RTAC) Rule 1(b) (2019)[4] and the Rules of the Circuit

Courts of the State of Hawai'i (RCCH) Rule 23(a) and Rule 23(e)

(2019).[5]  West Maui Resort filed its Notice of Appeal within

---

4    RTAC Rule 1(b) provides:

> These Rules shall be construed and administered to secure the just, speedy, and inexpensive determination of every action. These Rules shall be read and construed with reference to each other, the Hawai'i Electronic Filing and Service Rules, the HRCP, the RCCH, and the Hawai'i Court Records Rules.  The RTAC shall apply unless an issue is not covered by these Rules, in which case the HRCP and the RCCH shall apply, in that order. To the extent there is any conflict between these Rules and the Hawai'i Court Records Rules or the Hawai'i Electronic Filing and Service Rules, the latter shall prevail.

5    RCCH Rule 23(a) and Rule 23(e) provide:

> **(a) Preparation.**  Within 10 days after a decision of the court awarding any judgment, decree, or order, including any interlocutory order, the prevailing party, unless otherwise ordered by the court, shall prepare a judgment, decree, or order in accordance with the decision . . . .
> . . . .
> **(e) Request for Entry.**  If the drafting party fails to timely submit a proposed judgment, decree, or order to the court, any other party may present, through conventional or

(. . . continued)

thirty days of the entry of final judgment, but fifty-two days after entry of the orders denying West Maui Resort's summary judgment and granting summary judgment for the County.

This court held in Alford v. City & Cnty. of Honolulu that the appealable decision of the Tax Appeal Court is the decision that "finally decides all issues in the tax appeal," and a separate final judgment is unnecessary for appeal. 109 Hawai'i 14, 22, 122 P.3d 809, 817 (2005). We explained in Alford that HRCP Rule 58, requiring a separate final judgment to appeal, only applies to civil actions in circuit courts, not to the Tax Appeal Court. Id. at 20-23, 122 P.3d at 815-17. However, Alford neither involved a final judgment, nor determined how appeals work when a final judgment is issued after summary judgment orders resolve all issues.

Alford does not preclude entry of final judgment in the Tax Appeal Court. The summary judgment order in Alford constituted the final decision that started the thirty-day appeal clock. Where there is no order constituting a final decision, a final judgment is what "finally decides all issues in the tax appeal." Id. at 22, 122 P.3d at 817.

---

(continued . . .)

> electronic filing, a proposed judgment, decree, or order to the court for approval and entry. A request for entry must represent that the drafting party failed to timely submit a proposed judgment, decree, or order as required by this Rule.

In Cabral, this court held that an otherwise untimely appeal based on a court's erroneous approval of a stipulated appeal extension was valid under the "unique circumstances" doctrine. 127 Hawai'i at 185, 277 P.3d at 279. There, the parties stipulated to extend a notice of appeal deadline, which the circuit court incorrectly approved. Id. at 181, 277 P.3d at 275. Petitioners then filed a notice of appeal within the extended deadline. Id. at 177-78, 277 P.3d at 271-72. The ICA dismissed the case for lack of appellate jurisdiction, but this court reversed. Id. at 181, 277 P.3d at 275. We reasoned:

> Petitioners relied, to their detriment, on the order granting an extended . . . deadline, and reasonably believed that the original . . . deadline was no longer effective. In light of the circuit court's order, it is not surprising that Petitioners filed their notice of appeal after the expiration of the original deadline, but within the presumptively valid extended deadline. The State, having stipulated to the extended . . . deadline, and not challenging appellate jurisdiction until the issue was raised by the ICA, has not been prejudiced. Under the specific, unique factual circumstances of this case, we hold that application of the equitable doctrine of "unique circumstances" is in the interests of justice and appropriate.

Id. at 185, 277 P.3d at 279 (emphases added).

Under a strict reading of HRS § 232-19, West Maui Resort's appeal was untimely because it was not filed within thirty days of the orders denying West Maui Resort's summary judgment motion and granting the County's summary judgment motion, which together constituted a final decision. Alford, 109 Hawai'i at 23, 122 P.3d at 818 ("[W]here the decision of the court finally deciding a tax appeal is clearly ascertainable,

22

the matter of appealability is not uncertain, and, thus, entry of a separate judgment on the decision to 'make certain the matter of appealability' would not serve the purpose of the separate judgment rule."). West Maui Resort appealed twenty-two days after the thirty-day appeal window expired.

However, West Maui Resort requested entry of final judgment before the expiration of the appeal period, and the Tax Appeal Court entered the requested judgment within that same period. See Cabral, 127 Hawaiʻi at 184, 277 P.3d at 278 (applying the "unique circumstances" doctrine where "[p]etitioners' request for an extension of time was filed prior to the expiration of the original deadline."). West Maui Resort's appeal would therefore be timely under the "presumptively valid extended deadline" period because it appealed twenty-nine days after the final judgment - within thirty days pursuant to Hawaiʻi Rules of Appellate Procedure Rule 4(a)(1) (2021). See id. at 178, 277 P.3d at 272. Thus, West Maui Resort reasonably relied on the Tax Appeal Court's final judgment and the "application of the equitable doctrine of 'unique circumstances' is in the interests of justice and appropriate" in this case. See id. at 185, 277 P.3d at 279.

Thus, we conclude that this court has jurisdiction over the merits of West Maui Resort's appeal under Cabral's "unique circumstances" doctrine.

**B.    The Tax Appeal Court Did Not Err in Concluding that the County Had the Constitutional Authority to Create the Time Share Classification and Tax Time Shares Accordingly**

**1.    The Hawai'i Constitution authorizes counties to tax real property and does not limit their ability to create tax classifications**

The counties have broad constitutional authority to tax real property under article VIII, section 3 of the Hawai'i Constitution, which states in relevant part:

> The taxing power shall be reserved to the State, except so much thereof as may be delegated by the legislature to the political subdivisions, and except that all functions, powers and duties relating to the taxation of real property shall be exercised exclusively by the counties . . . .

In Gardens, a time share vacation club challenged its Maui County real property tax assessment shortly after the County reclassified all time share units under the Hotel and Resort classification.  90 Hawai'i at 337-39, 978 P.2d at 775-77. We wrote that owners "subject to a time share plan, although vested with ownership rights in their time slots, put the units to use much like transient hotel guests, resulting in intensive use of the property." Id. at 343, 978 P.2d at 781.  Appellants argue that Gardens held time shares were properly classified in the Hotel and Resort classification because hotel and time share units have an identical use.

However, Gardens did not hold that hotel and time share properties have an identical use, requiring the County to indefinitely maintain both types of properties in the same tax

24

classification.  In upholding the County's 1997 ordinance that moved all time share units under the Hotel and Resort classification, this court held only that it was rational for the County to classify time share and hotel units together because of their similar use.  See id. at 342-43, 978 P.2d at 780-81.  This court also noted that the County wanted to "uniformly classify time share units" because some of them were taxed under the Apartment classification, while others were taxed under the Hotel and Resort classification.  Id. at 342, 978 P.2d at 780 (internal quotation marks omitted).  Gardens focused on the rationality of (1) uniformly classifying all time share units in the same classification and (2) classifying time share and hotel units together, but did not hold that time share units and hotel units are used identically.  See id. at 342-43, 978 P.2d at 780-81.

The Hawai'i Constitution grants counties broad powers to tax real property, including creating real property tax classifications that are taxed at different rates.  It places no limitations on counties when creating those classifications.  Neither does the MCC.  The MCC requires most real property to be assigned to a tax classification based on highest and best use.  Further, all properties are taxed according to their real property value.  These principles limit the County's ability to single out individual properties.  Nevertheless, the County may

25

classify different property types based on reasonable policy considerations other than use under the Hawai'i Constitution's broad authorization to tax real property.

**2.    The Time Share classification is constitutional because it acts as a real property tax**

This court has held that a tax's nature "is not determined by the label given to it but by its operating incidence."  Stewarts' Pharmacies, 43 Haw. at 144 (citation omitted).  We agree with the County that the Time Share classification and its rate act as a tax on real property based on the assessed property value, whereas the TAT is a tax assessed on individual visitors and the value of their stay.

Appellants do not show how the Time Share real property tax is actually a tax on individual time share unit users.  Critically, the TAT is assessed on time share visitors according to the "fair market rental value" of individual units, which under HRS § 237D-1 is defined as "one-half . . . the gross daily maintenance fees that are paid by the owner . . . ."  HRS § 237D-1.  On the other hand, the Time Share classification rate is assessed on the appraised real property's value.  See MCC § 3.48.180 ("[A]ll real property shall be subject to a tax upon one hundred percent of its fair market value determined in the manner provided by ordinance, at such rate as shall be determined in the manner provided . . . .")  We therefore agree

with the Tax Appeal Court that "[t]he subject tax is a tax rate that is applied to the assessed value" of real property, and is not a tax on users' stays.

It is undisputed that the County's real property tax assessments are based on properties' value, not occupancy or any other user-related metric.  MCC § 3.48.290 states that the County's Finance Director

> must cause the fair market value of all taxable real
> property to be determined and annually assessed by the
> market data and cost approaches to value using appropriate
> systematic methods suitable for mass valuation of
> properties for taxation purposes, so selected and applied
> to obtain, as far as possible, uniform and equalized
> assessments throughout the County . . . .

Appellants repeatedly point to Councilmembers' concerns about declining TAT revenues which led them to create "a new real property tax rate classification for timeshare units in order to collect a more equitable share of taxes for services used by owners of timeshare units."  Council of the County of Maui, Budget and Fin. Comm. Rep. No. 04-78 at 10 (2004), https://www.mauicounty.gov/ArchiveCenter/ViewFile/Item/8909 [https://perma.cc/8NBH-WW8S].

While the Council might have wished to raise revenue to address time share users' impacts, the Time Share classification tax rate is imposed as an ad valorem tax.  See Black's Law Dictionary (11th ed. 2019) (defining ad valorem tax as "a tax imposed proportionally on the value of something (esp.

27

real property), rather than on its quantity or some other measure"). Time share properties are taxed under the Time Share classification based on their appraised value, not on the number of users or length of users' stays. The record reflects that the real property tax is assessed on the time share plan managers, such as West Maui Resort and Ocean Resort. But the record does not show that time share interval owners – i.e. the individual visitors who buy time share points and stay in the time share units – pay the real property tax directly, if at all. Indeed, counsel for West Maui Resort acknowledged at oral argument that even if no time share unit owners visited the property, the real property tax would still be assessed. In contrast, a TAT would not be assessed if those visitors did not come.

Therefore, we affirm the Tax Appeal Court's conclusion that the Time Share classification and its rate act as a real property tax, and the County did not exceed its authority under Hawai'i Constitution article VIII, section 3 in adopting them.

**3. The County did not violate the MCC by creating the Time Share classification or assigning appellants' time share units to the Time Share classification**

Appellants argue that the County violated the MCC because (1) MCC § 3.48.305.A. required the County to create classifications based on real property use, and (2) MCC §§ 3.48.305.A. and C. required the County to assign time share

28

units based on use.  Because the County allegedly violated the MCC when it created the Time Share classification or when it assigned their units to the Time Share classification in 2005, appellants argue their properties should have been assigned to the Hotel and Resort classification, and taxed accordingly.  We disagree.

First, the MCC does not require the County to create real property classifications based on use.  Appellants point to Gardens, which stated that the County "classifie[d] real property into nine classifications based on use for the purpose of real property taxation."  90 Hawai'i at 337, 978 P.2d at 775.  At the time Gardens was decided, MCC § 3.48.305.A. (1997) stated that "land shall be classified, upon consideration of its highest and best use, into the following general classes." (Emphases added.)  Similarly, at the time of these appeals, MCC § 3.48.305.A. stated that "real property must be classified, upon consideration of its highest and best use, into the following general classes."  (Emphases added.)  Appellants argue that this provision requires the County to create classifications based on highest and best use.

We hold that the MCC does not require the County to consider highest and best use when creating classifications. MCC § 3.48.305.A. only requires that the County consider real property use when classifying real property parcels into a

particular classification.  It says nothing about whether the County must consider use when creating those classifications in the first place.

Here, the County appropriately considered a variety of factors when creating the Time Share classification, including the use of such properties and their broader impacts on the community and economy at large.  See, e.g., Council of the County of Maui, Budget and Fin. Comm. Mtg. Minutes at 41-48 (Apr. 25, 2005) https://www.mauicounty.gov/ArchiveCenter/ViewFile/Item/9641, [https://perma.cc/2BSS-E2LV].

Appellants' claim that the County violated its own code when assigning their parcels to the Time Share classification is irrelevant for the present appeals.  The 2010 amendment to MCC § 3.48.305 applies to this case.  Appellants concede that "[p]rior to the passage of the exception created by Ordinance 3766 in 2010, the MCC required that the classification of timeshares be based on use," but the passage of that ordinance "except[ed] timeshares from the requirement of considering only 'highest and best' or 'actual' use . . . ." (Emphasis omitted.)

MCC § 3.48.305 (2020), which applies to the appeals at issue, provides:

> A.     Except as otherwise provided in subsection [3.48.305(B)], real property [shall] be classified, upon consideration of its highest and best use, into the following general classes:
>
> . . .
>
> B.     In assigning land to one of the general classes, the director must give major consideration to: the districting established by the land use commission in accordance with chapter 205, Hawaiʻi Revised Statutes; the districting established by the County in its general plan and comprehensive zoning ordinance; use classifications established in the Hawaiʻi state plan; and other factors that influence highest and best use; except that:
>
> . . .
>
>> 5.     Real property that is subject to a time share plan as defined in section 514E-1, Hawaiʻi Revised Statutes, as amended, must be classified as "time share."

Subsection B exempts time share units from being considered based on highest and best use and requires the County to classify real property subject to a time share plan under the Time Share classification.  Thus, we reject Appellants' argument that time share units must be assigned to a real property tax classification according to their use because the Code specifically exempts time share units from that requirement.

We therefore affirm the Tax Appeal Court's decision on this issue and conclude that the County neither exceeded its constitutional authority when creating the Time Share classification, nor violated its own code in doing so.

**C.    The County's Taxation of Time Share Units is Not Preempted**

Under the test outlined in Richardson v. City & Cnty. of Honolulu, state law preempts a municipal ordinance "if (1) it covers the same subject matter embraced within a comprehensive state statutory scheme disclosing an express or implied intent to be exclusive and uniform throughout the state or (2) it conflicts with state law."  76 Hawai'i 46, 62, 868 P.2d 1193, 1209 (1994).

This court explained in Richardson that:

> A conflict exists if the local legislation duplicates, contradicts, or enters an area fully occupied by general law, either expressly or by legislative implication.
>
> Local legislation is "duplicative" of general law when it is coextensive therewith.
>
> Similarly, local legislation is "contradictory" to general law when it is inimical thereto.
>
> Finally, local legislation enters an area that is "fully occupied" by general law when the Legislature has expressly manifested its intent to "fully occupy" the area, or when it has impliedly done so . . . .

Id. at 61, 868 P.2d at 1208 (emphases and citation omitted).

Appellants argue that the State's TAT scheme preempts the Time Share classification and its rate under the Richardson test.  We disagree.

1. **The Time Share classification does not cover the same subject matter embraced within a comprehensive state statutory scheme**

Appellants argue that the Time Share classification and its rate are preempted because they cover the same subject matter as the State's comprehensive TAT scheme. This argument fails because the State's TAT scheme neither expressly nor implicitly precludes counties from taxing transient accommodation properties through real property taxation.

The legislature created the TAT "to tax visitors for their use of county infrastructure and services by assessing the cost of transient accommodations that is allocated to the operator . . . ." Travelocity.com, 135 Hawai'i at 127, 346 P.3d at 196. As discussed above, the Time Share classification does not tax visitors. See supra section IV.B.2. The Time Share classification and its rate act as a real property tax on time share properties. Thus, the subject matter of the State's TAT is not the same as the Time Share classification.

Moreover, the State did not design the TAT to be the only source of revenue to repair infrastructure within the counties, and thus, the TAT does not preempt the Time Share classification because of a comprehensive statutory scheme. See Application of Anamizu, 52 Haw. 550, 554, 481 P.2d 116, 119 (1971) (noting that county's ordinance imposing "additional qualifying regulations" on contractors was preempted by state's

comprehensive statutory scheme to license and regulate contractors). Rather, the State created the TAT to support counties' ability to improve infrastructure for tourists, because Hawai'i residents alone bore these costs previously. The State decided to allocate a certain portion of TAT revenues to counties because

> [T]ourism is the largest industry in Hawaiʻi, and many of the burdens imposed by tourism falls on the counties. Increased pressures of the visitor industry mean greater demands on county services. Many of the costs of providing, maintaining, and upgrading police and fire protection, parks, beaches, water, roads, sewage systems, and other tourism related infrastructure are being borne by the counties.
>
> Upon further consideration, your Committee has amended this bill in order to share the TAT revenues with the counties.

Travelocity.com, 135 Hawai'i at 122, 346 P.3d at 191 (emphasis omitted).

But the TAT's structure did not prevent counties from raising their own revenue through real property taxes that might also contribute to these same expenses. Instead, the State decided to allocate TAT revenues across several priorities, including a set percentage distributed to each county. See HRS § 237D-6.5 (2017). The State intended for the TAT to be passed to individual visitors, and not the properties themselves. See Travelocity.com, 135 Hawai'i at 122, 346 P.3d at 191 (stating TAT "was not a tax on the hotels, but instead, was a mechanism to tax visitors by assessing the cost of their hotel room to

34

correlate to costs associated with visitor use of infrastructure and county services.")

Further, when enacting the TAT, the legislature knew that counties used real property taxation to generate revenue for a variety of costs because of article VIII, section 3's language. In 1978, the legislature proposed an amendment to the Hawai'i Constitution that shifted real property taxation to the counties, reasoning:

> Traditionally, much of the revenue for local government is derived from the real property tax.
>
> . . .
>
> Your Committee concludes that the power to levy a tax on real property should be granted to the counties for the following reasons:
>
> > (1) County governments are completely responsible and accountable for the administration of their local affairs. It is felt that in order to have complete authority over their county finances the real property tax function should be given to the counties.
> >
> > . . .
> >
> > (4) There are certain program elements which do not Invoke issues of statewide concern and/or which Do not lend themselves to single, statewide solutions. In other words, there are different economic bases and needs of the counties which cannot be addressed by statewide real property provisions.

Proceedings of the Constitutional Convention of Hawai'i of 1978 at 594-595.

We wrote recently that when proposing article VIII, section 3, the legislature

> rejected a proposal to adopt a general excise tax, noting that "should the counties desire additional revenues," the

35

> counties should do so through "the real property tax by
> increasing the rates."
>
> . . . .
>
> We note that the counties' power to tax real property
> cannot be construed in isolation, but instead, must be
> construed with reference to "the current prohibition on the
> State taxing real property."

Kaheawa Wind Power, LLC v. Cnty. of Maui, 146 Hawai'i 76, 91, 93,
456 P.3d 149, 164, 166 (2020) (citation and emphasis omitted).

Thus, the legislature enacted the TAT knowing that
counties already used real property taxes to raise additional
revenue and would likely continue to do so, even with the new
TAT contributions. The State did not reserve revenue-generating
powers for infrastructure repair exclusively for the TAT.
Cf. Citizens Utilities Co., Kauai Elec. Div. v. Cnty. of Kauaʻi,
72 Haw. 285, 288, 814 P.2d 398, 400 (1991) (holding county
ordinance that set utility poles' height was preempted by state
statute and scheme that authorized only public utilities
commission to "supervise and regulate public utilities, which
would include the height of utility poles").

We therefore conclude that the State's TAT does not
cover the same subject matter as the County's Time Share
classification.

2. **The Time Share classification does not conflict with
state law**

The County's Time Share classification and rate do not
conflict with state law because they do not duplicate,

36

contradict, or enter an area fully occupied by the State's general law. As described, the Time Share classification and its rate are not duplicative of the TAT because they operate distinctly. See supra section IV.B.2. The TAT taxes transient accommodation visitors separately from other general excise taxes and real property taxes.

The Time Share classification and its rate also are not contradictory or inimical to the TAT, as Appellants argue. See Richardson, 76 Hawaiʻi at 61, 868 P.2d at 1208. Appellants point to Travelocity.com, 135 Hawaiʻi at 123, 346 P.3d at 192, in which this court stated that the legislature intended to "minimize the impact of the [TAT] on Hawaiʻi visitors and the hotel industry." But Travelocity.com concerned a situation in which the TAT was effectively assessed "twice: first, against the [online travel companies] based on the room rate plus the mark-up and service charges, and second, against the hotel on the net rate collected for the room." Id. at 126, 346 P.3d at 195 (emphasis omitted). Accordingly, we held that "the legislature intended the TAT to be a tax upon the transient, assessed on the cost of a hotel room," but "did not intend that the TAT would be assessed in full on multiple operators." Id. We emphasized that the TAT operates by taxing the "transient's cost of the hotel room . . . ." Id.

In contrast, the Time Share classification rate operates on the assessed real property value of the time share property as a whole, not on the transient cost of the time share unit.  Here, the TAT was only assessed once against time share plan operators.  While those time share plan operators must also pay real property taxes, appellants have not shown that the Time Share classification rate operates as a double TAT assessment.

Further, the Time Share classification is far from entering an area that is fully occupied by general law. Richardson, 76 Hawaiʻi at 61, 868 P.2d at 1208.  Article VIII, section 3 of the Hawaiʻi Constitution explicitly grants counties, not the State, the power to tax real property.  The State's TAT does not preempt all taxation of visitors, nor of the visitor industry.  See Travelocity.com at 113, 346 P.3d at 182 (noting general excise tax "is imposed on the travel agency and hotel operator on the respective portion of the gross income allocated or distributed to each, and no more" in addition to TAT).  Indeed, as stated above, the legislature passed the TAT knowing that the Constitution authorizes the counties exclusive power to tax real property, and did not provide any limitations on how the TAT might interact with those taxation provisions. See Application of Ferguson, 74 Haw. 394, 400, 846 P.2d 894, 898 (1993) ("[T]he legislature is presumed to have enacted valid statutes in harmony with all constitutional provisions.").

We therefore conclude that the County acted within its constitutional authority by creating the Time Share classification because it does not invade the State's authority to impose the TAT.  Thus, the TAT does not preempt the Time Share classification because the two taxes do not conflict.

**D.    The Time Share Classification and Its Rate Do Not Violate the Equal Protection Clauses of the Hawaiʻi and U.S. Constitutions**

"In analyzing alleged equal protection violations, classifications that are neither suspect nor quasi-suspect are subject to the rational basis test."  Del Rio v. Crake, 87 Hawaiʻi 297, 304, 955 P.2d 90, 97 (1998) (internal quotations omitted).

> In analyzing tax classifications under the equal protection clause, this court has stated that "where . . . discrimination is of a 'non-suspect' or 'non invidious' variety, such discrimination is not unconstitutional if there is any rational basis for such classification.  Such discrimination is only a violation of equal protection if it is totally arbitrary or capricious." In re Pacific Marine & Supply Co., Ltd., 55 Haw. 572, 581, 524 P.2d 890, 896 (1974). Under this "rational basis test," it is the court's function "only to seek to adduce any state of facts that can reasonably sustain the classification statute . . . challenged." Id. at 582, 524 P.2d at 896. "If the classification statute . . . is arguably tailored to serve the state policy, it is not arbitrary or capricious, and hence is constitutional under the equal protection clauses."

Gardens, 90 Hawaiʻi at 342, 978 P.2d at 780 (ellipses in original).

1.   **Rational basis review applies because time share owners are neither a suspect class nor subject to invidious discrimination**

In Gardens, this court applied rational basis review to a vacation club's claim that a Maui County ordinance violated the equal protection clauses of the Hawai'i and U.S. Constitutions by classifying its time share units under the "Hotel Resort" category.  Id.  This court held that the ordinance's stated purpose to uniformly classify time share units under the Hotel and Resort classification was reasonably "tailored to serve the policy of eliminating disparate tax treatment, [and thus] is neither arbitrary nor capricious."  Id. at 342–43, 978 P.2d at 780–81.  This court emphasized that the vacation club did not acquire vested rights in its Apartment classification because "detrimental reliance on a tax classification alone is insufficient to establish a constitutional right."  Id. at 345, 978 P.2d at 783.  We also held:

> Multiple owners subject to a time share plan, although vested with ownership rights in their time slots, put the units to use much like transient hotel guests, resulting in intensive use of the property. The "Hotel Resort" classification thus legitimately applies to properties whose actual use is transient or short-term, regardless of whether the units are used personally. That being the case, higher tax rates as applied to time share units are rationally related to the ordinance's purpose, and do not violate the equal protection clauses of the Hawai'i and United States Constitutions.

Id. at 343, 978 P.2d at 781 (emphasis added).

40

Here, Appellants argue that the County's creation of the Time Share classification and the assignment of their properties to it deprived them of equal protection. They contend that (1) heightened scrutiny should apply because the County impermissibly distinguishes between state residents and nonresidents in a way that violates the fundamental right to travel, and (2) the County's Time Share classification rate is the "product of invidious discrimination" against time share owners.

Time share owners are neither a suspect class nor the object of invidious discrimination. They are property tax payers subject to a uniform tax rate. Thus, they are not a suspect class that receives heightened protection under the equal protection clauses of the Hawai'i or U.S. Constitutions. See Gardens, 90 Hawai'i at 342, 978 P.2d at 780 (applying rational basis review to time share owners' classification equal protection clause challenge); Pac. Marine, 55 Haw. at 580-81, 524 P.2d at 896 (applying rational basis review to shipping company's equal protection challenge of tax assessments).

The Time Share classification also does not violate time share owners' right to travel. First, non-residents are not a suspect class. See Daly, 215 F. Supp. 2d at 1113 (stating that while Honolulu ordinance "on its face, classifie[d] on the basis of residency, non-residents are not a judicially

recognized suspect class"). Further, even if some time share owners are out-of-state residents, all time share owners - both residents and nonresidents - are taxed at the same rate within the Time Share classification. Appellants offer no evidence of the County's animus or invidious intent to discriminate against either time share owners or nonresidents. See Allied Stores, 358 U.S. at 530 (noting "discrimination against residents is not invidious nor palpably arbitrary because, as shown, it rests not upon the 'different residence of the owner,' but upon a state of facts that reasonably can be conceived to constitute a distinction . . . which the State is not prohibited from separately classifying for purposes of taxation" under federal equal protection clause). The alleged invidious discrimination against time share owners reflects the County's nondiscriminatory concerns about time share properties' burden on infrastructure and the local economy.

We therefore review for rational basis.

**2.    The Time Share classification is reasonably related to several different legitimate policy purposes**

The County considered several legitimate policy purposes that were reasonably related to the creation of the Time Share classification and the setting of the corresponding tax rate.

> [W]here, as here, discrimination is of a non-suspect or non-invidious variety, such discrimination is not unconstitutional if there is any rational basis for such

> classification. Such discrimination is only a violation of
> equal protection if it is totally arbitrary or capricious.
> Furthermore, it is well established that anyone who
> questions the constitutionality of a statute on equal
> protection grounds has the burden of showing, with
> convincing clarity, that the challenged classification does
> not rest upon some ground of difference having a fair and
> substantial relation to the object of the legislation.

Pac. Marine, 55 Haw. at 581, 524 P.2d at 896-97 (internal quotation marks omitted).

> In analyzing tax classifications under the equal
> protection clause, this court has stated that "where . . .
> discrimination is of a 'non-suspect' or 'non invidious'
> variety, such discrimination is not unconstitutional if
> there is any rational basis for such classification. Such
> discrimination is only a violation of equal protection if
> it is totally arbitrary or capricious." . . . Under this
> "rational basis test," it is the court's function "only to
> seek to adduce any state of facts that can reasonably
> sustain the classification statute . . . challenged." "If
> the classification statute . . . is arguably tailored to
> serve the state policy, it is not arbitrary or capricious,
> and hence is constitutional under the equal protection
> clauses."

Gardens, 90 Hawaiʻi at 342, 978 P.2d at 780 (citations omitted and emphases added).

The County considered many legitimate policy purposes reasonably related to the creation of a separate real property tax classification for time share units. Appellants argue the Time Share classification creation is not rationally related to a legitimate policy purpose because generating revenue to account for time share visitors' impact on County infrastructure does not "survive constitutional scrutiny." As discussed above, supra section IV.C.1, the County may use real property taxation to generate revenue and is not limited as to how it uses that revenue for various costs. Article VIII, section 3 of the

43

Hawai'i Constitution was specifically designed to "grant the counties full control over their finances, . . . [and] further the democratic ideal of home rule, and allow the counties flexibility in addressing their unique local needs."  City & Cnty. of Honolulu v. State, 143 Hawai'i 455, 458, 431 P.3d 1228, 1231 (2018).  Generating revenue needed for infrastructure costs or other items in the County's budget is not an improper policy purpose.  See Kaheawa Wind Power, 146 Hawai'i at 91, 456 P.3d at 164 (noting that when adopting article VIII, section 3, "the Standing Committee rejected a proposal to adopt a general excise tax, noting that 'should the counties desire additional revenues,' the counties should do so through 'the real property tax by increasing the rates.'") (citation omitted).

Moreover, the County considered many different purposes when creating the Time Share classification, including time share properties' burdens on employment, infrastructure use, and Maui's ability to attract visitors for large events. See, e.g., Council of the County of Maui, Budget and Fin. Comm. Mtg. Minutes at 41-48 (Apr. 25, 2005), https://www.mauicounty.gov/ArchiveCenter/ViewFile/Item/9641, [https://perma.cc/2BSS-E2LV].  It also wanted time share properties to contribute revenue needed for infrastructure repair and maintenance.  These are legitimate policy purposes, and the creation of a separate real property tax classification

44

that could be used to regulate this type of land differently is rationally related to those purposes.

The Time Share classification tax rate is also constitutional. Neither the Hawai'i Constitution nor the MCC require that real property tax rates be related to actual property use. See MCC § 3.48.565. Appellants point to the County Finance Director's erroneous calculations and statements that he did "not have an analysis for why we would justify or ration[alize]" the rate as evidence that the County acted arbitrarily. Council of the County of Maui, Budget and Fin. Comm. Mtg. Minutes at 11 (Apr. 19, 2005), https://www.mauicounty.gov/Archive.asp?ADID=1772&ARC=5718 [https://perma.cc/Q6MC-EJ35]. However, the committee report that set the initial rate for the Time Share classification further explained that:

> In 2004, the Council established the Time Share classification to address the need for owners and occupants of time share units to pay a more equitable share of taxes for County services they utilize and the economic impact they place on the surrounding community. The Mayor proposed to establish a new Time Share real property tax classification at a rate of $16 per $1,000 of net taxable assessed valuation. Your Committee received oral and written testimony from time share industry representatives requesting a rate of $9.50. Due to uncertainties of the impacts created by time shares, your Committee added an appropriation for an independent study of the economic and social impacts of the time share industry on the County. Pending the outcome of this study, your Committee decided to reduce the Time Share tax rate to $14 per $1,000 of net taxable assessed valuation.

Council of the County of Maui, Budget and Fin. Comm. Rep. No. 05-63 at 10-11 (May 16, 2005) (as amended),

45

https://www.mauicounty.gov/Archive/ViewFile/Item/9582
[https://perma.cc/ZVD9-D37N].

Under rational basis review, it is our duty "only to seek to adduce any state of facts that can reasonably sustain the classification statute . . . challenged." Gardens, 90 Hawai'i at 342, 978 P.2d at 780; see also Tax Found. of Hawai'i v. State, 144 Hawai'i 175, 205, 439 P.3d 127, 157 (2019) ("[T]he rational basis standard 'is especially deferential in the context of classifications made by complex tax laws. In structuring internal taxation schemes the States have large leeway in making classifications and drawing lines which in their judgment produce reasonable systems of taxation.'") (citation omitted). The County considered the difference between hotel and time share TAT revenues as one factor for setting this rate, but it was not the only reason.[6]

The County also considered time share properties' broader impacts on the community when it created the Time Share classification, and presumably drew on these same considerations when setting the tax rate. See, e.g., Council of the County of Maui, Budget and Fin. Comm. Mtg. Minutes at 41-48 (Apr. 25,

---

[6] The County Finance Director explained that "the examination of the time-share versus hotel for the TAT calculation is [the] only run rationale that could be done in terms of evaluating the rate. It was the rationale that we looked to, but clearly it did not establish the rate." Council of the County of Maui, Budget and Fin. Comm. Mtg. Minutes at 116 (Mar. 22, 2005), https://www.mauicounty.gov/ArchiveCenter/ViewFile/Item/9618 [https://perma.cc/D5D3-RSXJ].

2005)
https://www.mauicounty.gov/ArchiveCenter/ViewFile/Item/9641,
[https://perma.cc/2BSS-E2LV].  Neither the Maui County Code nor
any other source requires that tax rates be set at exactly the
number that would make tax revenue contributions from all
sources equal.  On these facts, the County set a rate rationally
related to its several policy purposes, including raising
revenue for time share properties' impacts on the community.

We conclude that the classification of time share
units under the Time Share classification is reasonably related
to legitimate policy purposes, including to (1) ensure that time
share properties make greater contributions to the County's
revenue and (2) mitigate time share properties' impact on County
infrastructure.  Thus, we conclude that the Time Share
classification's creation and rates are constitutional under the
equal protection clauses of the Hawai'i and U.S. Constitutions.

## V.    CONCLUSION

For the foregoing reasons, we affirm the Tax Appeal
Court's (1) Order Granting Appellee County of Maui's Motion
for Summary Judgment filed August 16, 2022 in Case
No. 1CTX-21-0000071; (2) Order Denying Appellant West Maui
Resort Partners LP's Motion for Summary Judgment filed
August 16, 2022 in Case No. 1CTX-21-0000071; (3) Order Granting
Appellee County of Maui's Motion for Summary Judgment filed

March 2, 2023 in Case No. 1CTX-21-0000569; and (4) Order Denying

Appellant Ocean Resort Villas Vacation Owners Association's

Cross-Motion for Summary Judgment filed on March 2, 2023 in Case

No. 1CTX-21-0000569.

Kurt W. Klein,                           /s/ Mark E. Recktenwald
James M. Yuda,
(Robert G. Klein and                     /s/ Sabrina S. McKenna
David A. Robyak on the briefs)
for appellant-appellant                  /s/ Todd W. Eddins
West Maui Resort Partners LP
                                         /s/ Dean E. Ochiai
William C. McCorriston,
Brett R. Tobin                           /s/ Rowena A. Somerville
for appellant-appellant
Ocean Resort Villas Vacation
Owners Association

Brian A. Bilberry
for appellee-appellee

Thomas Yamachika
(on the briefs)
for amicus curiae
Tax Foundation of Hawai'i

